NEW YORK COUNTY—HON. EDWARD. C. WEST, SURROGATE—
November, 1858.

THE WESLEYAN UNIVERSITY, ETC. *v.* THE TROY CON-
FERENCE ACADEMY.

*In the Matter of the Last Will and Testament of* LUCRETIA
VAN PELT.

The testatrix died February 6, 1856, and among other legacies in her will, she bequeathed a certain sum to the Troy Conference Academy, at West Poultney, Vermont. On the 12th day of January, 1857, the trustees of the academy executed a lease to a private individual for nine hundred and ninety-nine years, at a nominal rent, it being fully provided that the lessee should "carry on the school contemplated by and in the charter, or acts incorporating the same, according to all the conditions of said acts of incorporation."

*Held,* that the legacy became vested in the academy on the death of the testatrix; and whether the subsequent execution of the lease operated to dissolve the corporation or not, the fact of such previous vesting controlled the course of the legacy and entitled the academy thereto.

E. L. FANCHER, *for the Residuary Legatees.*

I. A foreign corporation must prove its corporate existence and user; an exemplification of its charter and proof of user are requisite. (*Williams* v. *Bank of Michigan*, 7 *Wend.*, 539.)

II. A corporation has no other powers than such as are specifically granted, or are necessary to carry into effect the powers expressly granted. (*People* v. *Utica Ins. Co.*, 15 *Johns.*, 358.)

III. A corporation may be dissolved by a surrender of its corporate rights (*Slee* v. *Bloom*, 19 *Johns.*, 456); and if a corporation suffer acts to be done which destroy the end and object for which it was instituted, it is equivalent to a surrender of its rights. (*Ib.*; 2 *Rev. Stat.*, 463, § 38.) So "if it suspends its ordinary business." (*People* v. *Bank of Hudson*, 6 *Cow.*, 217, 220.) The rule adopted in all the cases which have occurred on this question seems to have been this: that where the effect of the surrender is to destroy the end for which the corporation or the corporate capacity was instituted, the corporation or the corporate capacity is itself destroyed. (2 *Kyd on Corp.*, 467.)

IV. In all gifts to a corporation, a charitable use is implied. Such gifts, which do not fall within the legal notion of charity, are void. (*Owens* v. *Missionary Soc. of M. E. Ch.*, 14 *N. Y.* [4 *Kern.*], 380, 410.)

WILLIAM P. CHAMBERS, *for the Troy Conference Academy.*

I. The bequest should be paid over to the Troy Conference Academy, unless the residuary legatee shows, 1st, that the bequest is invalid; or 2d, that the legatee is incompetent to take. The validity of the bequest itself not admitting of any question, it is sought to defeat the same by showing that the legatee has become incompetent to take. That incompetency is predicated of the fact that the legatee has executed a lease of property belonging to it for nine hundred and ninety-nine years.

II. The chief question that arises is, whether the execution of the lease referred to has worked a dissolution of corporate existence. In this case, a dissolution can only be pretended to arise out of either *surrender* or *forfeiture.* It is not claimed that there has been a technical surrender and acceptance, nor that there has been a dissolution judicially declared upon proceedings by *quo warranto* or *scire facias*— all which are necessary to constitute surrender or forfeiture. (*Code*, § 429.)

III. The lease in question was executed January 12th, 1857, while the will was made in 1852, and the testatrix died in 1856. The lease disposes of a specified portion of the corporation's property, and assumes to pass nothing more. It undertakes to confer none of its franchises. It was expressly executed for the purpose of carrying on the institution established by the charter, and nowhere contemplates the abandonment or surrender or transfer of a single franchise. The utmost that can be said is, that the corporation has disposed of a certain portion of its property to pay its debts. The literary institution established by the charter remains. The trustees continue to be appointed by the Troy Annual Conference of the Methodist Episcopal Church, and constitute "a body corporate and politic," as declared by the charter.

IV. The charter does not require the corporation to possess the property in question. Unless, therefore, this act of disposing of a certain portion of its property to pay its debts has worked a dissolution of its corporate existence, there is no reason why this legacy should not be decreed to be paid over to it.

V. Admitting that the lease could not be lawfully executed, still, that does not of itself, even though it should be cause of forfeiture, work a dissolution. (2 *Kent's Com.*, 359, and cases cited; *Conn. & P. River R. R. Co.* v. *Baily*, 24 *Vermont*, 465; *Brandon Iron Works* v. *Gleason*, *Id.*, 228.) But beyond all question, the corporation had full power to make the lease. (*Angell & A. on Corp.*, 170.) In *De Ruyter* v. *St. Peter's Church* (3 *N. Y.* [3 *Comst.*], 238), the

Court of Appeals held that "the power of a corporation to assign its property in trust for the payment of its debts cannot at this day be doubted. It has been settled law, not only in this State but in other States."

VI. A corporation may sell all its property, and still remain a corporation. (2 *Kent's Com.*, 359.) "It does not follow that a corporation is dissolved by the sale of its visible and tangible property for the payment of its debts, and by the temporary suspension of its business, so long as it has the moral and legal capacity to increase its subscriptions, call in more capital, and resume its business." (*Brinckerhoff* v. *Brown*, 7 *Johns. Ch.*, 217; *Mickles* v. *Rochester City Bank*, 11 *Paige*, 118; *State* v. *Bank of Maryland*, 6 *Gill & John.*, 205; *Boston Glass Manufactory* v. *Langdon*, 24 *Pick.*, 49; *State* v. *Rives*, 5 *Iredell* [*N. C.*], 309; *Brandon Iron Works* v. *Gleason*, 24 *Verm.*, 228.)

VII. But a reference to the respective dates of the will, the death of the testatrix, and the execution of the lease, shows that the legacy vested in the Troy Conference Academy before the execution of the lease, which is the alleged ground of the surrender.

VIII. To deprive the Troy Conference Academy of this bequest would defeat the manifest intention of the will. The same institution remains, unchanged in every particular, and still promoting every object for which it was originally chartered.

J. A. MAPES, *for the Executors.*

THE SURROGATE.—The testatrix, Mrs. Lucretia Van Pelt, by her will makes fifteen bequests, the largest number to religious societies, and bequeaths the residue of her estate, real and personal, to "The Wesleyan University of Middletown, Connecticut," and to "The New York Annual Conference of the Methodist Episcopal Church." These societies are of the number taking general legacies; the testatrix directing one thousand dollars to be paid to the former, and fourteen hundred dollars to the latter. All the legacies have

been promptly paid by the executors, except the one under consideration.

The legacy in dispute is to "The Troy Conference Academy," located at West Poultney, in the State of Vermont. The ground taken by the residuary legatees, the two religious societies above mentioned, is, that the charter of the Vermont academy has been surrendered in consequence of non-user. This academy became embarrassed, and the trustees, in order to free the same of debt, for a certain consideration, executed a lease to a private individual for nine hundred and ninety-nine years, at a nominal rent, it being fully provided that during the term this individual should " carry on the school contemplated by, and in the charter or acts incorporating the same, according to all the conditions of said act of incorporation." The lease appears to have been drawn with great care ; and after a number of recitals and covenants, provides that if the lessee shall fail to perform any of the conditions or covenants, the corporation shall re-enter : it is also provided that the lease shall not become valid until it receives " the approval and sanction of the Troy Annual Conference of the Methodist Episcopal Church." It is not in evidence that this approval and sanction have ever been obtained. The execution of this lease is the sole ground urged of surrender by reason of non-user.

Two or three dates, however, will dispose of the case. The charter of the academy was granted by the Legislature of Vermont, on the 26th day of October, 1834. The testatrix died February 6th, 1856.

Letters testamentary were granted on the 7th day of April, 1856. After a long negotiation, the lease above referred to was executed. It bears date 12th of January, 1857, and was recorded on the thirteenth of that month.

These dates show that the legacy became actually vested, beyond all possible dispute, in this academy, nine months before the alleged surrender of their charter. If this legacy had been to an individual, it would have gone, in the event of death, after vesting, to his executors and administrators.

The charter of the academy allowing it, as it does, to receive legacies, &c., in what respect can the case be made to differ from that of an individual? What has the surrender of its charter, by reason of non-user, to do with the matter, when that surrender, if it ever occurred, occurred nine months after the legacy had been vested?

The case is therefore disposed of upon the above grounds; but if it appeared necessary to consider the question of surrender, I should decide, without a moment's hesitation, that no body of men could have taken more precautions than the trustees of the Troy Conference Academy to shut out the possibility of an inference that they intended to surrender the charter of this institution by the execution of the lease. In fact, the lease is nothing more nor less than a contract to carry out the charter. How can that be said to be a surrender?

The legacy must be paid, with interest from the 6th day of February, 1857. The costs to be paid by the estate, with a counsel-fee, to be settled by the surrogate, to the counsel for the academy.