Colvill v. The St. Paul and Chicago Railway Co.

## JANE E. COLVILL

### *vs.*

## THE ST. PAUL AND CHICAGO RAILWAY CO.

The proceedings in this case were taken under the same charter, as that under which the cases of *Simmons*, and *Grannis*, against these defendants arose, (18 *Minn.* 184; *Id*, 194) and, as in those cases, the defendant's road had been constructed and in operation through the plaintiff's land, a strip from which is sought to be condemned, prior and down to the trial. The rule laid down in those cases as to the admissibility of opinions upon the value of the property, without the road, at the time the defendant entered thereon, and its value with said strip taken out of it and appropriated by it to its purposes of constructing and operating its railroad thereon, followed and applied to the facts of this case.

The highway run through the property; and the railroad went through a part thereof which lay between said highway and the Mississippi river. Evidence is admissible to show what such portion taken, by itself, was worth, without the railroad, at the time of the taking aforesaid, and what the balance would be worth after taking out the piece appropriated by the railroad.

A witness was properly allowed to be asked what another portion of the property was valuable for, and to answer that it would be valuable for building and residence purposes.

Increased exposure to fire by the passage of a railroad track directly through lands near where buildings are already erected, may be considered by the jury in estimating the compensation due to the land owner. An instruction is objectionable which tends to mislead the jury into the belief that they should take into consideration the injury to the property for farming purposes only.

In this case, as in the cases of *Simmons*, and *Grannis*, against

the same defendant, (18 *Minn.* 184; *id.* 194,) an appeal was taken from the report of commissioners appointed under the defendant's charter to make an appraisal and award for lands taken by the defendant for the purpose of its road, to the district court for Goodhue county. Upon the trial the jury found a verdict for the plaintiff. Defendant moved for a new trial, which was denied, and from the order denying such motion an appeal is taken to this court. The questions presented are similar to those in the cases above mentioned, and sufficiently appear in the opinion.

SMITH & VAN SLYCK, for Appellant.

W. COLVILL with J. C. McCLURE, for Respondent.

*By the Court.*—RIPLEY, CH. J.—The grounds of the motion for a new trial from the order denying which this appeal is taken, are:

1. Excessive damages appearing to have been given under the influence of passion and prejudice.

2. That the verdict was not justified by the evidence, and is contrary to law.

3. Errors in law occurring at the trial and excepted to.

The first is not urged. In support of the second it is said, that on the question of the value of the property, the whole testimony in the case shows that the damages awarded by the jury were very much in excess of a large majority of the estimates made by the witnesses in the case.

The verdict is indeed largely in excess of the estimates made by the defendant's witnesses, but it is not in excess of the estimate of any witness of the plaintiff, and is much less than that of most of them. The fact, therefore, that the defendant's witnesses outnumbered the plaintiff's is no ground for setting aside the verdict.

Colvill v. The St. Paul and Chicago Railway Co.

These proceedings are taken under the same charter as that under which the cases of *Simmons* and of *Grannis vs.* this defendant arose. In this case, as in those, the defendant had entered upon and taken possession of the strip of land out of plaintiff's property (lot 6, section 28, T. 113, R. 14, containing 67 70-100 acres) sought to be condemned, long before the trial, commencing work thereon in August, 1870; had completed its road over it some six months before trial, and had used it ever since down to the time of the trial, viz.: December 19, 1871. The charter directs that the jury shall " assess the value of the lands so entered upon, taken, possessed, occupied and used, by said company, at the time it was so entered upon and taken."

A witness called for plaintiff testified that the property in question was in Red Wing ; that he was acquainted with the value of property in the city generally, and also of the property in question at the time of the taking and was then so acquainted.

The witness was then asked, " What was the value of the property (said lot 6,) without the railroad thereon, and what was the value of the same with the road at the time the railway took the same for its purposes ?"

This was objected to as not a proper question ; that no proper foundation had been laid ; that the competency of the witness to answer the question had not been shown, and that the same is incompetent.

The witness was competent. When the value of property, real or personal, is in controversy, persons acquainted with it may state their opinion as to its value. *Simmons vs. St. P & Ch. R'y Co.*, 18 *Minn.* 184. As to the question itself, it is awkwardly worded, but it plainly means to ask for the value of said lot without the road at the time the defendant entered upon it, and its value with said strip taken out of it by the

defendant and appropriated by it to its purposes of construct-ing and operating its railroad thereon.

The question is, therefore, substantially identical with those approved in said cases of *Simmons*, and *Grannis*, and since it appears from the instructions given at defendant's request that the same view was taken by it at the trial, as in those cases, upon the argument in this court, of the meaning of the words " value of the land taken," viz.: that the plaintiff was entitled to a just and fair compensation for the taking of said strip of land for said purposes, to be arrived at by ascertain-ing the difference between the value of the whole premises immediately before the taking, and its value immediately after the taking of the said strip for its purposes aforesaid, and as the scope of this appeal, like those, was but to secure a re-trial of the same matter submitted to and passed upon by the com-missioners, it is not only of no more consequence now, than in those cases, to consider whether the value of the land taken at the time of such taking aforesaid, is that just compensation without which private property cannot be taken for public purposes, but the question must be held competent on the defendant's own view of the law, as well as on the authority of the cases aforesaid.

Another witness was asked by plaintiff, " Taking the west six rods front by twenty-six rods deep on the north side, run-ning through from the highway to the river, what would it be worth by itself, without the railroad, at the time it was taken for railway purposes ? " This was objected to as incompetent, irrelevant and immaterial; the objection was overruled, and defendant excepted.

The defendant gives no reason in this court why this or any other question objected to was incompetent, etc. It simply " insists that each objection taken by the appellant, to each of the questions put to the witnesses by the respondent on the

Colvill v. The St. Paul and Chicago Railway Co.

trial below, which were overruled by the court, and answers allowed, were well taken, and it was an error for which new trial should have been granted," and refers to 10 *Minn* 267; 11 *Minn.* 515; 16 *Minn.* 260.

We can discover nothing in those cases to justify the present exception, and the case in 11 *Minn.* 515, seems to warrant the question.

It seems that the highway ran through this property; this strip lay between it and the river, and the railroad went through it. Certainly, upon principle, there can be no objection to arriving at the damages to the whole property, by estimating the damage to different subdivisions of it, whether such portion be divided from the rest by a railroad, or a highway, or by its nature, as if one portion be upland, and another pasture, and another plowland.

This witness, after stating that the strip in question was worth $300, stated, the defendant's objection thereto being overruled, to which it excepted, that after taking out the piece taken by the railway company, the balance would not be worth $50, making a difference in value of $250, in his opinion. As already stated, we are unable to see why this was not allowable.

Some thirty acres of the whole premises lay on the north side of the highway. A witness having stated that the railway damaged that portion about $1,200, was asked, "What was the property on the north side valuable for?" which was objected to as incompetent, the objection overruled and exception taken. The witness answered that it would be valuable for building and residence purposes. We are entirely unable to discover why the question and answer were not proper. It showed upon what his estimate of damages was based, and thereby gave the defendant an opportunity, if the land was not in fact valuable for such purpose by proving that, to show the jury that his opinion was not entitled to consideration. And

if the land was valuable for such purposes, we cannot understand why the jury were not entitled to know it.

The 6th and 7th instructions requested by the defendant were properly refused.

The 6th was objectionable as tending to mislead the jury into the belief that they should not take into consideration the fact, which was in evidence, that the road passed so near to plaintiff's barn, stock-yard, etc., that in the language of one of the witnesses the " barn site    *    *    is now destroyed "; the same witness stating that it was the most convenient on the place ; and we understand from the evidence that the reason why it was destroyed, why, as another witness stated, he would not build stacks there, would not have a barn there, was the danger of fire from the locomotive.

We agree with Redfield, that where the track passes directly through land near where buildings are already erected, " it is difficult to conjecture upon what ground it could be claimed that the increased exposure to fire was not a serious detriment to the owner." 1 *Redf.* 291, *n.* 11

In this case, for instance, how can it be said that the loss of the most convenient site for a barn, etc., on the place, is not a serious detriment and does not proportionally diminish the value of the property in the market ?

· We agree with the plaintiff that the 7th is objectionable as tending to mislead the jury into the belief that they should take into consideration the injury to the property for farming purposes only. As the plaintiff says, a close examination shows that this is not actually said. But the defendant objected to evidence that part of the property was valuable for building lots. It remarks, also, in its brief, that perhaps the instructions given abstractly covered the whole law that should enter into a trial of this kind, and if the court had confined the testimony to its proper bounds, these requests might

not have been necessary, but taking the testimony as it was, they became proper, and defendant thinks necessary, to let the jury fully understand what facts they should consider in estimating damages.

We think, therefore, that the sentence beginning, " any evidence as to what use," etc., in connection with the one which precedes, was not only aimed directly at the testimony above mentioned, but would have been so understood by the jury.

Order appealed from affirmed.