## MARY A. CURTIS

### *vs.*

### THE ST. PAUL, STILLWATER & TAYLOR'S FALLS RAILROAD CO.

*Lehmicke, Admr., &c., vs. St. P., S. & T. F. Railroad Co.*, 19 *Minn.* 464, followed, as to the power of the district court of Ramsey county, to make an order changing the place of trial of this action (commenced in said district court) to the district court of Washington county, the facts in the two cases affecting the question being substantially the same.

Where land is taken for railroad purposes under proceedings like the present, witnesses acquainted with the land and its value may state their opinions of its value immediately before the taking of the same, and immediately thereafter, and the amount of damages done to the land by such taking.

Exceptions to the reception of testimony of certain witnesses as to their opinions of the value of the land taken for a railroad in this case, and as to the amount of damages done thereby to the premises of the plaintiff, considered and determined.

Curtis v. The St. Paul, Stillwater and Taylor's Falls Railroad Co.

The law under which this defendant is organized (*Gen. Stat. ch.* 34, *tit.* 1,) authorizes it to take, use, and appropriate the land of a citizen, in the manner therein prescribed, only when necessary for the purpose of the road. The laying out and opening a *common public highway* is not such a purpose, and no authority is given it to condemn the land of a citizen for such purpose. In the present state of the return in this court, and upon this appeal, we must presume the record shows that the taking of the respondent's premises was for some purpose authorized by the law. The necessity for taking the same for the purposes of the road must also be assumed. It was not competent, therefore, for the railroad company to prove that the land in question was condemned by it for a public highway; nor that the commissioners assessed the damages to the land upon that basis; nor what the damages would be if the land or any portion of it were taken for a public highway. But it was competent for the respondent to inquire and prove what the damage would be if the premises were taken for railroad purposes.

It also follows that there was no error of which the *appellant can complain* in the following instruction of the court to the jury given at the respondent's request, viz.: "That the railroad company, under their articles of incorporation, can only take property for the purpose of a railroad and telegraph line, and having once condemned property it can use it for any purpose connected with its enterprise. It can use the property condemned of appellant for its main or side track. They can build a depot, freight house, engine house, or warehouse upon it at any time they choose, or appropriate it for any railroad purpose they choose." Since, for aught that appears in this record, this land in question may have been taken and condemned expressly for the purposes mentioned in the instruction of the court, if the appellant relied upon any error in that regard, he should have brought the record here in order to raise the point.

When the track of a railroad passes directly through the land near where buildings are already erected, the increased exposure to fire is a proper element of damages to the owner of the land, following *Colvill v. St. Paul and Chicago Railway,* 19 *Minn.* 283. On the same principle when the building is a dwelling house, the increased danger of injury to or destruction of the household of the occupant affects injuriously the value of the premises as a dwelling place, and unless they are equally valuable for some other purpose is an element of damage to the owner.

This is an appeal by the defendant, from an order of the

district court for Washington county, denying a motion for a new trial; and this case, and the points presented by the appeal therein, are so similar to the case of *Lehmicke, adm'r, &c., vs. the same deft.*, (19 *Minn.* 464,) and so fully stated in the opinion, that any further statement is unnecessary.

JOHN B. & W. H. SANBORN, for Appellant.

BIGELOW, FLANDRAU & CLARK, for Respondent.

*By the Court.*—McMILLAN, J.—The railroad company, appellant, is organized under *ch.* 34 of the *Gen. Stat.* It instituted proceedings under the provisions of that chapter to obtain the right of way through the respondent's land in Washington county, by application to the district court of Ramsey county, under section 14, for the appointment of commissioners to assess the damages arising to said land by reason of the taking thereof    The commissioners made their award and filed it in the clerk's office of the district court of Ramsey county pursuant to section 20, and the respondent appealed therefrom to the said district court.   Subsequently, and before the trial thereof, the venue or place of trial was by consent of parties changed from the district court of Ramsey county, to the district court of Washington county.   The case was tried in the latter county, and after verdict the railroad company moved for a new trial, which was denied.   The company appealed from the order denying a new trial.

We determined in a case of similar character submitted at the present term, that although the order of the district court of Ramsey county changing the place of trial is not within the scope of the appeal from an order denying a new trial, inasmuch as the question might be raised on a certiorari to the judgment of the court below, in order to prevent future

Curtis v. The St. Paul, Stillwater and Taylor's Falls Railroad Co.

litigation, it might be determined on such appeal. And on the merits of the question it was determined that under *sec.* 25 of *ch.* 34, *Gen. Stat.* the district court of Ramsey county in which the proceedings were instituted, had authority to order a change of venue to the county of Washington, and that the district court of Washington county had jurisdiction to try the cause and enter judgment therein. *Lehmicke, adm'r, &c. vs. The St. Paul, Stillwater and Taylor's Falls R. R. Co.,* 19 *Minn.* 464. The first point made by the appellant, that the district court of Washington county had no authority to try, or jurisdiction of the case, is therefore overruled.

It is settled in this state, that where land is taken for railroad purposes, under proceedings like the present, witnesses acquainted with the land, and its value, may state their opinion of its value immediately before the taking of the same, and immediately thereafter, and the amount of damage done to the land by such taking. *Simmons v. Chicago & St. Paul R. Co.,* 18 *Minn.* 184 ; *Colvill v. same deft.,* 19 *Minn.* 283 ; *Lehmicke, admr. v. St. P., S. & T. F. R. Co., supra.*

The property involved in this controversy is situated in the city of Stillwater. The respondent called, among other witnesses, John McKusick, George M. Seymour, James Rutherford, and William E. Thorne, who testified as to their opinions of the value of the premises, and the damages by reason of the appropriation of the land taken by the appellant. The appellant objected to the testimony of these witnesses, respectively, on the ground, that it did not appear that they were sufficiently acquainted with the value of the premises to make their opinions on the subject competent evidence, and excepted to the several rulings of the court admitting the testimony.

Mr. McKusick before stating his opinion as to value testified as follows : " I reside in Stillwater ; have resided here thirty years ; I have been in lumbering business a good deal ; haven't

dealt much in real estate ; think I am familiar with the value of real estate in Stillwater ; I know Mrs. Curtis' premises ; the map is a fair representation of the amount taken by the railroad ; I have known the premises a long time." Mr. Seymour testified, " I have resided here fifteen years ; I have an idea of the value of real estate in Stillwater ; I am acquainted with the Curtis property ; have been fifteen years." Mr. Rutherford testified, " I reside in Grant, Washington county ; have resided there twenty-two years. I am familiar with the city of Stillwater. I know the property in question ; have known it many years." Upon cross-examination he stated, " I have never bought or sold a single lot in any addition to Stillwater, either for myself or any one else ; I never bought or sold within two miles of that property, never saw any sale made. My only knowledge is from hearsay or reading in papers. There were but two or three houses in Stillwater when I came here." Upon re-examination he states, " I have watched the progress of Stillwater, have known nearly every building when erected. I can't explain my knowledge except as above. I have a knowledge of the value of real estate in Stillwater from what I have known and heard."

Mr. Thorne testifies : " I have been a resident here seventeen years ; am a merchant ; am acquainted with value of real estate a little, not much ; have known the Curtis property since 1858." Stillwater is a city of from 6,000 to 8,000 inhabitants. McKusick, Seymour, and Thorne, have been residents there thirty, fifteen, and seventeen years, respectively. Rutherford has been a resident of the immediate vicinity thereof for twenty-two years ; there were but three houses in the place when Rutherford came there. McKusick and Rutherford have seen laid the very foundations of the city, and have watched its entire progress to the day of trial.

Curtis v. The St. Paul, Stillwater and Taylor's Falls Railroad Co.

Seymour and Thorne have been familiar with it during the greater portion of its existence, and the most important period of its growth.   These are all men of intelligence and observation, and all appear to be disinterested witnesses. They have all been familiar for a long time with the premises which are the subject of consideration, and each states that he is acquainted with the value of real estate in this locality.

The rule being settled, as it is in this State, that a witness may state his opinion as to the value of real estate in cases like the present, we think these witnesses show that they were qualified to express their opinions upon that question. The testimony was, therefore, properly received.

The respondent's counsel having inquired of the witnesses Hospes, Rutherford and Butts the value of the premises immediately before the taking, asked them, as appears by the paper book, " what is their value *now?*"   This, upon its face, refers to the time of the trial, which was about one year subsequent to the construction of the road.   The rule, certainly, is as stated by the appellant, that the proper measure of damages in such case, is the difference between the value of the property immediately prior to the taking by the railroad, and its value immediately after such taking.

This rule has been so clearly and so long settled in this state, that it was at the time of this trial well known to the courts and profession, and, we believe, universally recognized and acquiesced in.   The court in its charge to the jury distinctly laid it down to them as the law by which they were to be governed, and all the circumstances, except the form of this question, seem to indicate clearly that the court and counsel regarded this as the law of the case throughout the trial.   We certainly cannot think that the attention of the court or counsel for the respondent, under the general

objection, incompetency and irrelevancy, was called to the form of the question, as to the time referred to.

It seems to have been assumed that no change in the condition or value of the premises had taken place from the time of the taking by the railroad to the time of the trial, and the witnesses seem to refer to the difference in value as having occurred at the time of the construction of the road and by reason thereof. While, therefore, the form of the question is technically erroneous, we do not think that the jury were misled by the evidence; and we do not feel that substantial justice requires us to grant a new trial upon the ground of this objection.

The remaining exceptions to the rulings upon the admission and rejection of evidence upon the trial, insisted upon on the argument in this court, may be considered in connection with the appellant's exception to the following instruction of the court to the jury given at the request of the respondent's counsel, namely: "That the railroad company under their articles of incorporation, can only take property for the purpose of a railroad and telegraph line, and having once condemned property it can use it for any purpose connected with its enterprise. It can use the property condemned of appellant for its main or side track. They can build a depot, freight house, engine house, or warehouse upon it at any time they choose, or appropriate it for any railroad purpose they choose."

The general law, under which this railroad company is organized, provides that any corporation organized under its provisions " may obtain the right of way, over and across any lands needed for the construction of any railroad or telegraph, and all necessary sites and grounds for depots, shops and other buildings requisite for the proper carrying on of the

Curtis v. The St. Paul, Stillwater and Taylor's Falls Railroad Co.

business to be transacted," &c.   *Gen. Stat.*, *ch.* 34, *tit.* 1, *sec.* 13, *p.* 265.

" They shall present to the judge of the district court in any county in which said improvements or any part thereof is or is to be located, or through which said railroad or telegraph line runs,     *     *     *     a petition signed by the president and secretary of said company or corporation, setting forth a description of the enterprise to be prosecuted by them, the termini thereof, the counties through which the same is to run, a general description of the land, property, and real estate which it will be necessary to appropriate, take, use or overflow for the purpose of said enterprise, together with the names of the owners of such property, if known." *Ib.*, *sec.* 14, *pp.* 265, 266.

The commissioners appointed upon such petition are required to " meet     *     *     and proceed to examine the entire line of road,     *     *     telegraph line, railroad and improvements, or so much thereof as is described in said petition, and all the lands, property, or real estate which will be damaged, overflowed, taken, appropriated or used by or for the purpose of said enterprise, and which is described in said petition, and shall hear the allegations and testimony of all parties interested, and proceed to make in each case a separate assessment of damages which will result to any person, corporation, or company, by reason of the construction of said     *     *     *     *     telegraph line, railroad or improvement, and shall determine and appraise to the owners of said land, property, easement or any other right, proposed to be taken, the amount of damages arising to them respectively, from the taking thereof, after making due allowance for any benefit that such owners may respectively derive from the     *     *     telegraph line, railroad or improvement aforesaid." *Ib.*, *sec.* 19.

By *sec.* 25 of the same chapter it is provided, among other things, that appeals from the report of the commissioners shall bring before the appellate court the propriety of the amount of damages in respect to the parties to the appeal, and the court or jury, as the case may be, shall re-assess the damages aforesaid, and that the rule for ascertaining and fixing such damages shall be based upon the same principles that the commissioners are required to adopt in originally appraising and determining such damages.

Neither the paper-book furnished to us, nor the return to this court upon this appeal, contains the petition for the appointment of commissioners, the order for their appointment, or their report thereunder. The only knowledge we have of either of these documents or proceedings is derived from the notice of appeal from the assessment of the damages by the commissioners to the district court by Mary A. Curtis, the land owner in this instance. From this notice of appeal it is to be inferred that the petition was presented, and certain persons, named in the notice, appointed commissioners to assess the damages which might arise to any person, company or corporation from the taking or using any of their lands or property for the purpose of constructing and operating the St. Paul, Stillwater and Taylor's Falls Railroad ;—that their report was filed ; that a portion of lots numbers one, two, and three, in block number two of Hersey, Staples & Co.'s addition to Stillwater, owned by Mary A. Curtis, the respondent, and taken for the purpose of said railroad ; that the damages assessed by the commissioners to the owner for such taking was one thousand dollars ; and that the portion of said lots so taken are shown by the supplemental report of commissioners and the map accompanying the same, filed, &c.

A map used upon the trial below, and upon the argument here, is furnished to us. It purports to be a " map of the

St. P., S. & T. F. Ry., in Stillwater and additions," and exhibits by different colored lines and spaces the route of the road, but contains no written explanation concerning either such lines or spaces.

There is no dispute as to the portion of the premises of Mrs. Curtis which the commissioners condemned for the railroad. We have no doubt, whatever, that the law under which the railroad company is organized, authorizes it to take, use and appropriate the land of a citizen, by proceedings of this character, only when necessary for the purposes of the road. We are equally certain that the laying out or opening of a *common public highway* is not one of such purposes, and that no authority is given to it to condemn the land of a citizen for such purpose. In the present state of the return in this court, and upon this appeal, we must presume that the record shows that the taking of the respondent's premises was for some purpose authorized by the law. The necessity for taking the same for the purposes of the road must also be assumed, the only question upon the appeal being the propriety of the amount of the damages. The time and the manner of determining or reviewing that question is, not involved here. It is not necessary for us to determine, at this time, whether it is essential for the company in its petition, or the commissioners in their report, to mention the specific use for which any particular piece of land is taken, or whether, when land is taken for a specific use, it can afterwards be appropriated to any other use of the company, since, for aught that appears in this record, the land in question may have been taken and condemned expressly for the purposes mentioned in the instructions of the court. If the appellant relied upon error in that regard, he should have brought the record here in order to raise the point. It follows from these positions that it was not competent for the

railroad company to prove that the land in question was condemned for a public highway; nor that the commissioners assessed the damages to the land upon that basis; nor what the damages would be if the land were taken for a public highway; and that it was competent for the respondent to inquire and prove what the damages would be if the land were taken for railroad purposes. It also follows, that there was no error in the instruction of the court of which the appellant can complain. These considerations dispose of the 4th, 5th, 6th, 7th and 8th points of the counsel for appellant adversely to him.

The only remaining point is, that the court erred in instructing the jury that they would consider in estimating the damages arising to the owner, the greater hazard of her buildings from fire, and the danger of injury or destruction to her household from the use of the land by the railroad company, and refusing to charge the counter propositions submitted by the appellant.

The court, in its general charge to the jury, instructed them as follows, " The question for you to determine is, what injury to the premises of the plaintiff as they were at the time of the taking them for the road, is caused by such taking. The buildings of the appellant may be reduced in value by the contiguity of the road and the use of engines upon it. Her buildings and lands before adapted and used for particular purposes, may, from the same cause, become less fitted for such purposes. The owner may be incommoded by high embankments or deep excavations on the line of the road, her buildings subjected to greater hazard from fire, her household to injury or destruction, unless guarded with more than ordinary care." It seems to us that the reasonable construction of this language is that the only matter submitted to the jury, for which damages could be allowed, was the injury to the

Curtis v. The St. Paul, Stillwater and Taylor's Falls Railroad Co.

premises of the plaintiff, and that the hazard from fire, and danger of injury to or destruction of the plaintiff's household, were only to be considered by the jury as affecting the value of the premises of the plaintiff, the house being constructed for and used as a dwelling.

The west line of the land condemned or taken by the railroad passes through respondent's premises, within seven feet of the front porch of her house, in which she lives with her family. We have already determined in this court, that when the track passes directly through land near where buildings are already erected, the increased exposure to fire is a proper element of damages to the owner of the land. *Colvill v. St. Paul & Chicago Railway*, 19 *Minn.* 283 ; see also 1 *Redfield on Railways*, 291, *n.* 11. We are unable to see why, upon the same principle, the increased danger of injury to or destruction of the household of the occupant would not affect injuriously the value of the premises as a dwelling place ; and unless they were equally valuable for some other purpose be an element of damage to the owner. The instruction of the court was, therefore, correct, and the refusal of the court to charge the counter propositions was also correct, if for no other reason than that it required the court to charge that these were not proper elements in the question of the owner's damages.

The order denying a new trial is affirmed.