THE BURLINGTON & MISSOURI RIVER RAILROAD COM-
PANY IN NEBRASKA AND THE LINCOLN & NORTH-
WESTERN RAILROAD COMPANY, PLAINTIFFS IN ER-
ROR, v. WINFIELD S. BEEBE, DEFENDANT IN ERROR.

1. **Railroads:** DAMAGE TO TIMBER BY FIRE: OWNERSHIP OF
LAND. In an action in the nature of an *action on the case* for the
negligent use of a locomotive engine by the servants of the de-
fendants by reason of which the timber land of plaintiff was
damaged by fire, the plaintiff alleged ownership of the timber
land, which was denied by the defendant. *Held*, That proof that
plaintiff had been in the possession of the premises for a number
of years next before and at the time of the injury was sufficient
evidence of title *prima facie*.

2. **Competency of Juror.** The whole of the examination, and
all of the answers of a juror upon such examination, as to his
competency to serve as a juror in a given case, should be consid-
ered together, and if upon such consideration he seems to be
competent his challenge for cause by one of the parties should be
denied.

3. **The opinion or estimate of a witness** of the amount of
damage to the owner of a tract of timber land, or to the land
itself, caused by a fire running through it, is not admissible as
evidence.

4. **New Trial:** TAXATION OF COSTS. An erroneous overruling
by the trial court of a motion of a defendant for the re-taxation
of costs in a case is not a ground for setting aside the verdict of
the jury and granting a new trial in the case.

ERROR to the district court for Seward county. Tried
below before GEORGE W. POST, J.

*Marquett & Deweese* and *Norval Brothers*, for plaintiffs
in error.

*D. C. McKillip* and *Harwood & Ames*, for defendant in
error.

COBB, J.

The first point raised by the plaintiffs in error in their brief is, that plaintiff's title to the land, upon which the growing timber was damaged by fire, having been put in issue by the answer, was not sufficiently proved to entitle the plaintiff to recover.

This being an action for the negligence of the servants of the defendants, is of the nature of an action on the case, as actions were classified before the adoption of the code, and as the injury complained of was to the property itself and not to the plaintiff's possession thereof, the title was a material point in the case, not only to be alleged in the petition but to be proved on the trial unless admitted by the defendants. But while it is true that in this state a perfect title to land must be derived from the government of the United States, and must be based either upon a grant or patent to the person claiming such title, his ancestor, or grantor, or upon a possession within the statute of limitations, yet the possession of such title is only necessary to discharge the obligation of a covenant of title or to defend against a lesser one. For all other purposes which occur to the writer actual possession under claim of right and without badge of servitude is sufficient *prima facie*. If this position is correct, then when the plaintiff proved that he was in the actual possession of the injured premises, claiming title thereto, the burden was thrown upon the defendant to prove title out of the plaintiff, in order to avail itself of the defense raised by the point under consideration. No such proof being offered, the plaintiff must, for the purposes of this case, be deemed as possessed of the title to the land in question.

The second point is, as to the competency of one of the jurors to sit on the jury, as disclosed upon his examination, as follows:

Q. Do you know anything about this case?

A.  I have passed over the burnt district.

Q.  Have you formed such an opinion as would hinder you from giving an unbiased verdict in this case?

A.  I don't think it would be biased in any way.

### CROSS-EXAMINATION.

Q.  You have talked with the neighbors about this fire?

A.  No, all I know is from passing over it.

Q.  From what you have seen and heard have you or not formed any opinion as to which should recover?

A.  I have not.

Q.  You have formed no opinion as to the right to recover anything?

A.  No, sir.  Only passing by and seeing where the fire had passed.

Q.  Did you have any conversation with them as to how the fire had originated?

A.  No, sir.

Q.  Then you can have no opinion in this case unless you have heard and discussed the facts, could you?

A.  No, sir.  I know nothing about it, whether it originated from the railroad or some individual.  I don't know anything about it only from local reports.

Q.  Did you say in your direct examination that you thought the plaintiff ought to recover?

A.  No, sir.  Mr. Beebe made the remark that considerable damage was done.

Q.  Do you know the particular location of this forty acres?

A.  No, sir.  Seven years ago he offered to sell it to me.

Q.  You know about the character of the trees and the size of them, do you?

A.  I have not been on this piece of timber for six years.

Q.  Then you don't know the extent of the damage?

A.  No, sir.

Q. You have not seen the district since the fire occurred?

A. No, sir. Only in passing, and that is nearly a mile; no, probably a half a mile from it.

Q. In this case suppose no evidence was offered but what you know of the matter now, would you be of the mind that the plaintiff should recover or not?

A. I know nothing about it, I don't know whether the plaintiff owns the timber or not.

Q. Supposing that the defendants (?) offer in evidence what you know of the matter now, and no further testimony is offered in the case, would you, as a juryman, say that the plaintiff ought to recover?

A. Well, yes, from a certain local idea of the fire, and seeing it at that distance.

Q. Without any further testimony you would say the plaintiff ought to recover?

A. Yes, sir.

### RE-DIRECT EXAMINATION.

Q. Do you say that he ought to recover from the railroad company?

A. I don't know, I would have to have testimony as to who did the damage.

Q. Simply from seeing the timber land there you think somebody ought to pay for it?

A. Yes, sir.

Q. You don't mean to say you think that the railroad company ought to recover, or somebody else?

A. I don't know who should recover, any more than I know that the fire damaged the man's timber by running through it.

### EXAMINATION BY THE COURT.

Q. Have you formed an opinion as to how much damage has been sustained?

A. No, sir. I have not.

Q. You don't know anything about the amount of damage done?

A. No, sir.

Q. Nor the cause of the damage?

A. No, sir.

Q. Nor how it was caused?

A. Only what I hear through the country.

Q. Would that influence you in forming your verdict?

A. No, sir.

It will thus be seen that the examination of the juror was thorough and exhaustive. The object on the part of defendant's counsel evidently being to make the fact of the juror having passed along the road, and seen where a fire had run among the young and growing timber, disqualify him to sit upon the jury in the case. When it is borne in mind that the average juryman is not expected to pass a successful examination in logic or casuistry on short notice, it must be apparent that the exhaustive examination of this one signally failed to show him possessed of partiality as between the parties, preconceived opinion as to the merits of the case, or of temper such as would disable him to find a fair and impartial verdict upon the testimony in the case.

The third point made by the plaintiff in error is upon the admission of certain testimony introduced by the plaintiff in the court below for the purpose of proving the measure of damage to the timber land of the plaintiff by the fire set out by the engine of the defendant, and it urges the point that by the admission of such testimony the witnesses for the plaintiff were allowed to usurp the province of the jury in fixing the amount of plaintiff's damages.

The following quotations from the bill of exceptions show upon what foundation this point is based. The plaintiff, being on the stand as a witness in his own behalf and not having been examined as to his occupation or means of knowledge of the value of lands or other property, is asked the following questions on the part of the plaintiff:

Q.   Do you know the value of this land just before the timber was burned, before this fire went through it?

A.   Yes, sir.   I know the value of it.

Q.   What was it before the fire went through it?

A.   I would not have taken less than four hundred dollars for what it went over.

On motion of defendant this answer was stricken out as irresponsive to the question and incompetent.

Q.   The question is, what was the value of this forty acres of timber, not what you would have taken for it, but what was it worth?

A.   It was worth what I said.

Q.   I mean the forty acres, all of it?

A.   It was worth eight hundred dollars.

Q.   What was it worth after the fire went through it?

Defendant objects as being incompetent; witness has not shown himself competent to answer, and calls for a conclusion.   Overruled, and defendant excepts.

A.   It was worth—that's a pretty hard question to answer.   Did you consider the burned timber worth anything?

Q.   That is for you to say.   What was the diminished value, what was it worth after the fire went through it?

A.   Worth five hundred dollars or six hundred dollars.

Q.   What was the diminished value of the land; what was the damage done by that fire?

Defendant objects as incompetent.   Overruled, and defendant excepts.

A.   Four hundred dollars damage to me—that is to the land.

*    *    *    *    *    *    *    *    *    *    *

Q.   What was the value of the land and the timber on it as it stood before the fire went through it, the forty acres?

A.   Eight hundred dollars.

Q.   What was the value of the land as it was after the fire went through, with the timber burned?

Defendant objects as not laying a proper basis for the estimation of damages. Overruled, and exception.

A. About six hundred dollars, five hundred, or six hundred dollars. I consider that the damage to the land and the sale would be five hundred dollars.

Q. On what basis do you estimate the damage?

A. I looked at it in this way: I consider the timber eight hundred dollars before it was burned, and after it was burned it was not worth more than half as much. The burned timber if I could have used it or sold it, it would have been worth a little something to me, but it stood there perfectly worthless, some of it stands there now, some for post timber and some cannot be used for that. That is why I make the distinction between what the timber was worth and what I could really get out of it, and putting it to use.

The defendant moved to strike out all of this witness's testimony relating to his damages, because it is an improper and false basis on which the estimation is made. Overruled, and exception.

Mr. Healy, a witness for the plaintiff, after stating that he was acquainted with the value of timber land in Seward county, was interrogated, and answered as follows:

Q. Have you been on the land?

A. Yes, sir.

Q. When did you see the land?

A. I think some time in the latter part of May or fore part of June, 1880.

Q. What was your object in going to the land?

A. It was to see how much damage that land with others had sustained by reason of the fire across it.

Q. You examined, did you, and found out the damage?

A. Yes, sir.

Q. State what that damage was?

Defendant objects as being incompetent. Overruled, and defendant excepts.

Q.   State what the damage was, in your judgment?

Defendant objects as above; same record.

A.   I would like to understand whether you mean the damage to all the land or by the acre.

Q.   Well, the damage to the forty acres of timber land?

A.   I should think it was depreciated at least one-half its original value.

Q.   What was its original value before it was burned?

A.   I think twenty-five dollars per acre at least.

Q.   That is the forty acres was worth twenty-five dollars per acre?

A.   Yes, sir.

Q.   You think it has depreciated one-half?

A.   At least, I should think.   Yes, sir.

Q.   The original value would be $1,000, you would say, for the forty acres, and has depreciated one-half, or $500?

A.   Yes, sir.

It was in testimony that the forty-acre tract of land of the plaintiff is divided in nearly equal parts, as to number of acres on each side, by the Blue river, which runs through it in a nearly circular form.   Also, that as far as damage to standing timber was concerned the fire was confined to the westerly side of the river.   Yet all of the witnesses on the part of the plaintiff in the court below were interrogated and testified as to the damages by fire as applicable to the whole of the tract.   It also appears from the plaintiff's own testimony that a part of this forty-acre tract is not timber land at all, but at the time of the fire had been under cultivation.   The defendant in error, in his brief, says: "It would be manifestly improper for a witness to answer a question involving the whole issue, law as well as facts, on the question of amount of damages that should be recovered, such as, 'What amount of damages have the plaintiffs sustained by reason of the fire?' etc."   I fail to see any difference between the question in that form and that in which it was in fact put, both to the plaintiff himself,

when on the stand as a witness in his own behalf, and the witness Healy. Bearing in mind that at most not to exceed half of the forty-acre tract was burned over, then what is the difference between the question " What was the damage to the forty of timber lands?" as put to the witness Healy, or the question " What was the diminished value of the land? What was the damage done by the fire?" as put to the plaintiff himself, and the question " What is the damage to the plaintiff in consequence of the fire?" which defendant in error in his brief admits would be erroneous?

Nearly all of the cases cited by defendant in error to sustain the rulings of the court below on this branch of the case are right of way cases, yet while most of them hold that in such cases it is proper to take the opinions of witnesses (shown to be possessed of sufficient knowledge on the subject) upon the value of the premises before and after the taking, but few have gone the length of holding that the witness may also give his opinion as to the amount of damage to the remaining estate, caused by the taking. It cannot be denied that as a general rule witnesses must testify to facts only. There are exceptions to this rule; one of which is, where persons professionally acquainted with the science or practice in question are called upon to testify on questions of science, skill, trade, and others of a like kind. Another exception is found in the decisions of some of the courts, notably those of Massachusetts, and courts following them, on this question of damages to the remaining estate after the carving of a right of way for a railroad out of it.

In the case of *Shattuck v. Stoneham Branch Railroad,* 6 Allen, 115, I understand the court to base its decision partly on some time-honored usage of that commonwealth, and partly on "necessity and obvious propriety." On the other hand, the courts of Ohio, Indiana, Iowa, and other states have adhered to that which is confessedly the general rule, and which I regard as the safer one, of confining the

testimony of witnesses to facts, including values, and leave it to the jury to find the measure of damages from all the facts proved. *Atlantic & G. W. R. v. Campbell,* 4 Ohio S., 583. *Clev. & P. R. v. Ball,* 5 Id., 568. *Morehouse v. Mathews,* 2 Comst., 514. *Dunham v. Simmons,* 3 Hill, 609. *Paige v. Hazard,* 5 Id., 603. *Troy & Boston R. Co. v. Northern Turnpike Co.,* 16 Barb., 100. *Can. & Niag. F. R. Co. v. Payne,* Id., 273. *Montgomery R. R. Co. v. Varner,* 19 Ala., 185. *Ala. & Flor. R. Co. v. Burkett,* 42 Id., 83. *Evansville, &c., R. Co. v. Fitzpatrick,* 10 Ind., 120. *Balt., Pittsburgh & Chic. R. Co. v. Johnson,* 59 Id., 480. *Same plaintiff v. Stoner,* Id., 579. *Chic. & Alton R. Co. v. S. & N. W. R. R. Co.,* 67 Ills., 142. *Harrison v. Iowa Midland R. Co.,* 36 Iowa, 323. *Prosser v. Wapello Co.,* 18 Id., 327. *Henry v. Dubuque, &c., R. Co.,* 2 Id., 288. *Dalzell v. City of Davenport,* 12 Id., 437. *City of Parsons v. Lindsay,* 26 Kan., 430.

In a recent case, *F. E. & M. V. R. R. Co. v. Whalen,* 11 Neb., 587, this court, in the opinion by the present Ch. J., say: "It is doubtless a proper course to take the opinion of experts as to the value before it is affected by the location of the road. This done, the testimony on the question of damages should be confined to those matters affecting the value proper to be considered, leaving the jury to draw their own inferences therefrom, unaffected by the judgment of others."

But were it conceded that the law, as applicable to questions of damage in right of way cases, is as claimed by defendant in error, it would not, as it appears to me, sustain his position in the case at bar. The opinion of a witness as to the amount of damage sustained by the owner of land by reason of the taking of the right of way for a railroad thereon, if admissible at all, which is not conceded, is so on the ground of necessity, because there is no other way of bringing the facts or true condition of the thing before the minds of the jurors to enable them to form their own opin-

ions of the amount of damage. But it can not be said that there is no other way of bringing before the mind of a juror the amount of the loss caused by the destruction of growing trees but by the opinion of witnesses who have passed over the ground. Certainly standing trees are susceptible of being counted and measured, and their value as timber or fuel can be ascertained the same as any other species of property, and it is not a matter of mere opinions. And such value in the dead and charred condition compared with that while the trees were growing, and thus the amount of the damage caused by the fire arrived at without resort to the opinions of witnesses interested or disinterested.

The fourth point made by the plaintiff in error is founded upon certain instructions given by the district court to the jury, and certain prayers of the defendant in that court for instructions, which were refused. We think that the case was fairly submitted to the jury by the instructions. One of these was upon the point of the negligence of the defendant company in allowing dry grass, etc., to accumulate on its track, and this instruction the plaintiff in error alleges was unsustained by evidence. We think differently. There was evidence to the effect that when the section hands attempted to burn off the dry grass at this particular point, some month or so before the fire, the grass was so wet from some cause that it burned only in spots, and that such burning was only renewed by the accidental burning for which the suit was brought.

The fifth point arises upon the refusal of the district court to retax the costs. It appears from the bill of exceptions and the motion of the defendant below for the retaxation of costs that the said motion to retax the costs in the case was made and submitted upon the following agreed state of facts, which was the whole evidence and proof introduced or offered by either party on the hearing of said motion, to-wit:

That the following, among other costs, were taxed against the defendant (in the court below) at the April, 1881, term of said court, as witness fees and mileage of plaintiff's witnesses, to-wit:

| | | | | |
|---|---|---|---|---|
| J. C. Davis, 2 days, 8 miles, making | | | | ...............$4 80 |
| Mrs. Davis, 2 " 8 " " | | | | ............... 4 80 |
| O. I. Rodgers, 2 " 6 " " | | | | ............... 4 60 |
| Wm. Rodgers, 2 " 6 " " | | | | ............... 4 60 |
| Wm. Ashmead, 2 days, 8 miles, making | | | | ............... 4 80 |
| Mrs. Ashmead, 2 " 8 " " | | | | ............... 4 80 |
| I. Grimes, 2 " 8 " " | | | | ............... 4 80 |
| I. T. Anderson, 2 " " | | | | ............... 4 00 |
| O. Bemecher, 2 " 4 " " | | | | ............... 4 40 |
| L. Drame, 2 " 12 " " | | | | ............... 5 20 |
| George Davis, 2 " 8 " " | | | | ............... 4 80 |
| Herman Bemecher, 2 days, 4 miles, making | | | | ......... 4 40 |

That each and all of said witnesses were, for the same identical days of said term of court for which the said above costs were taxed, witnesses for one Henry Wortendyke in a case then pending in said court, wherein said Henry Wortendyke was plaintiff and these defendants were defendants, and in said cause of Wortendyke against these defendants each of said witnesses was allowed and taxed against these defendants the same witness fees and mileage (being full fees as per diem and mileage in each case) as allowed and taxed in this case, and for attendance upon this court for the same days of the term as allowed and taxed in this case. That neither of said witnesses was subpœnaed as witness in either of said cases for said April term, 1881, of this court, excepting Herman Bemecker and L. Drame, but each and all of said witnesses were duly subpœnaed in this case, and also in said case of Henry Wortendyke against these defendants, to appear in said case at the December, 1880, term of said court, and appeared at said December term and were informed by the court that they were required under said subpœna to appear at the April, 1881, term of said court

without further notice, or being again subpœnaed. That defendants have paid one-half of the said witness fees and mileage in this case, as well as in the said Wortendyke case for said term of April, 1881. Said motion to retax costs was by said district court overruled and an exception taken.

That upon the agreed state of facts as above set out there should have been a retaxation of the costs and the same duly apportioned between the two cases in which the witnesses had attended, there can be no doubt ; and its refusal can only be attributed to that loose practice in respect to costs which has prevailed in many of the courts, not to their credit but to the great injury of honest litigants. Yet I cannot see how the plaintiffs in error can avail themselves of the point under consideration in this proceeding. The erroneous refusal of the court to retax the costs could have no effect upon the verdict or judgment, and hence cannot be considered in a proceeding, the sole object of which is to obtain a new trial. The order to retax the costs was appealable, and such appeal would not necessarily have brought any other branch of the case before this court.

For error, in the admission of the testimony of the opinion of witnesses on the question of damages, alone, the judgment is reversed and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.

LAKE, CH. J., concurs.

MAXWELL, J., dissenting.

To that part of the opinion of the majority of the court holding that, "the opinion or estimate of a witness of the amount of damage to the owner of a tract of land or to the land itself caused by a fire running through it is not admissible as evidence," I cannot give my assent, for the following reasons:

The witnesses called to testify as to the amount of damages were shown to be acquainted with the value of the land, and could testify as to the amount of damage sustained from their own personal knowledge.    The opinions of such witnesses are admissible, not as being the testimony of experts, but as being founded upon *personal knowledge* of the subject.    Such opinions become to a certain extent facts, and are the most satisfactory evidence that can be given as to the amount of damages.    Thus, suppose a witness is called who knows the value of the property and the amount it is diminished in value by the injury complained of, his estimate, based upon personal knowledge and a personal examination of the premises, is certainly very much more satisfactory and more likely to lead to a correct verdict than a mere description of the premises to the jury and of the injury to the same.

In *Swan v. Middlesex*, 101 Mass., 177, it is said these opinions are admitted, not as being the opinion of experts strictly so called, for they are not founded on special study or training or professional experience, but rather from necessity, upon the ground that they depend upon knowledge which anyone may acquire but which the jury may not have, and that they are the most satisfactory and often the only attainable fact to be proved.    *Dwight v. County Coms.*, 11 Cush., 203.    *Shattuck v. Stoneham B. R. Co.*, 6 Allen, 116.    *Whitman v. B. & M. R. Co.*, 7 Allen, 316.    *Kellogg v. Krauser*, 14 S. & R., 137.    *Warren v. Wheeler*, 21 Me., 484.    *Clark v. Baird*, 5 Selden, 183.    *Snow v. Boston & Me. R. Co.*, 65 Me., 230.    *Brainard v. B. & N. Y. Cent. R. Co.*, 12 Gray, 407.    *Vandine v. Burpee*, 13 Met., 288.    *Snyder v. W. U. R. Co.*, 25 Wis., 60.    *Diedrich v. The N. W. R. Co.*, 47 Id., 662.    *Jacksonville, etc., R. Co. v. Caldwell*, 21 Ill., 75.    *Ottawa, G. L. & C. Co. v. Graham*, 35 Id., 346.    *C. & St. L. R. Co. v. Woosley*, 85 Ill., 370.

In the last case it is said (page 373):    "The witnesses

first stated that they had personal knowledge of the alleged injuries on which the claim for damages is based, and detailed their character. It was then competent to receive their opinions as to the amount of damages sustained." *Cooper v. Randall*, 59 Ill., 317. *Keithsburg & Eastern Railroad Co. v. Henry*, 79 Id., 290. *Curtis v. St. P., etc., R. Co.*, 20 Minn., 28.

Pierce, in his valuable work on Railroads, page 227, says: "Opinions are admissible as to the amount of damage or benefit resulting to an estate from the construction of a railroad." The same rule applies to damage sustained by a party from the destruction of his property by fire set out by the employees of the company while in the performance of their duties, and unless witnesses are permitted to testify to the amount of damages in cases of this kind the jury will be uninformed as to the amount for which they should render a verdict, and will therefore. be unable to perform their duty in a satisfactory manner. The judgment is fully supported by the evidence and is clearly right, and should be affirmed.