COUNTY OF BLUE EARTH *vs.* ST. PAUL & SIOUX CITY RAILROAD COMPANY.

December 23, 1881.

**Municipal Corporation — Beneficiary under "Town-Site Act."** — A county or other municipal corporation, capable of acquiring and holding real estate, if in the actual occupancy of any part of a town-site, is capable of becoming a beneficiary under the provisions of the act of congress of May 23, 1844, commonly known as the "Town-site act."

**Same — Interest Acquired as Occupant — Measure of Damages for Taking by Railroad.** — The facts of this case considered, and *held*, that the county of Blue Earth acquired, as occupant under its deed of conveyance from the judge who entered the town-site of Mankato, as trustee, pursuant to the provisions of the aforesaid act of congress, an absolute and unlimited estate in fee-simple of "Court-House Square," in Mankato, and not a mere limited and special interest, charged with a public trust; under a dedication thereof to public uses by the persons who executed the town plat of Mankato in 1852; that the county being thus the owner in fee with the power to alienate, the decrease in the value of the entire tract, caused by the taking of a part thereof by the defendant for the purposes of its road, was the measure of damages or compensation which the county was entitled to recover.

**Condemnation of Land — Evidence of Values, based on Subdivision into City Lots.** — Witnesses having testified as to the value of an entire block or square, both with and without the railroad constructed upon it,

and it appearing, on cross-examination, that they made their estimates of value upon the basis of dividing the property into lots, and fixing a value upon each lot, *held*, not to be error on the part of the court to refuse to strike out their evidence; it also appearing that property in the city in which the square was situated was generally divided into lots, and that the square in question was capable of being so divided.

**Same—Evidence as to Noise and Inconvenience.**—Evidence as to noise of passing trains, and as to the inconvenience and interruption to the use of the property, resulting from the ordinary operation of defendant's road, *held* competent, as bearing upon the question of the diminished value of the property caused by the construction of the road across the same.

**Same — Compensation Determined as of Time of Award or Trial.**— The compensation of a land-owner for property taken for public use is to be estimated as of the time of the award of the commissioners, or, where the assessment is made by a jury, as of the time of trial. This rule is not changed by the fact that a railroad company has, without the consent of the land-owner, entered upon the premises and constructed its road prior to acquiring the right of way by appropriate legal proceedings.

Appeal by defendant from an order of the district court for Blue Earth county, *Dickinson, J.*, presiding, refusing a new trial. The case is stated in the opinion.

*E. C. Palmer*, for appellant.

The county could not acquire title in fee-simple, with the full power of a private owner to dispose of and use it for business purposes. Its title is that of a trustee for limited and special public uses. *Williams* v. *Lash*, 8 Minn. 441 (496;) *Shelley* v. *Lash*, 14 Minn. 498; *James* v. *Wilder*, 25 Minn. 305; *City of Winona* v. *Huff*, 11 Minn. 75 (119;) *Schurmeier* v. *St. Paul & Pacific R. Co.*, 10 Minn. 59 (82;) *Gilbert* v. *Kennedy*, 22 Mich. 5.

The trial court erred in allowing the witnesses to give estimates of value, considering the "Court-House Square" as private, marketable property, divisible into lots; and in allowing the jury to base their verdict upon such evidence. *Burt* v. *Wigglesworth*, 117 Mass. 302; *Chandler* v. *Jamaica Pond Aqueduct*, 122 Mass. 305; *Presbrey* v. *Old Colony & Newport R. Co.*, 103 Mass. 1; *Isom* v. *Miss. Central R. Co.*, 36 Miss. 300, 313; *Searle* v. *Lackawanna & Bloomsburg R. Co.*, 33 Pa. St. 57.

*E. P. Freeman,* for respondent.

Counties are authorized to purchase and hold real estate for the use of the county. Gen. St. 1878, *c.* 8, § 83. By taking the proper steps under Laws 1855, *c.* 7, and also by adverse possession for twenty years, the county now has a legal title to the premises in question, and may dispose of them for business or other purposes, as it sees fit. 2 Dillon Mun. Corp. § 513 and note; *Seebold* v. *Shitler,* 34 Pa. St. 133; *Indianapolis, etc., R. Co.* v. *City of Indianapolis,* 12 Ind. 620; *Van Ness* v. *City of Washington,* 4 Pet. 232; *City of Cincinnati* v. *White,* 6 Pet. 431.

MITCHELL, J.* This was an action for damages for an alleged trespass by defendant, in building and operating a railroad upon the premises of plaintiff. The defendant, by its answer, converts the action into one for the condemnation of the premises for the purposes of its road, pursuant to the provisions of Gen. St. 1878, *c.* 34, §§ 33, 34, thus rendering the amount or measure of compensation which plaintiff was entitled to recover the main question of the case. The controlling consideration in the determination of this question is the nature and extent of plaintiff's interest and estate in "Court-House Square," in the city of Mankato, of which the *locus in quo* is a part. The plaintiff's contention is that the fee-simple absolute is vested in the county of Blue Earth, while that of defendant is that the county holds under a dedication of the premises by the owners, for the special and sole purpose of a site for a court-house, and hence that it has only a limited and qualified interest in the property, without any power of alienation, and that it is a mere trustee for a certain limited and special public use, and no other.

The material facts bearing upon this question are as follows:

In 1852, ten persons, pursuant to a common purpose, settled upon the lands embraced in the town-site of Mankato—some 320 acres—and made improvements on the same, and made and filed a plat thereof, showing a dedication to public use of the streets, alleys and squares marked for that purpose, on which plat the premises in controversy were marked "Court-House Square;" such settlement was

*Dickinson, J., having presided at the trial in the district court, took no part in the decision of this appeal.

made for "town-site purposes," (whatever those were,) under the town-site act of congress of May 23, 1844. They then procured the judge of the county court to enter the same, March, 1858, as trustee, for the benefit of the occupants, pursuant to the said "town-site act" of May 23, 1844. The county of Blue Earth, at least as early as 1856, went into possession and occupancy of this block or square, and constructed a jail upon it, and in 1857 erected upon it a fence and county buildings, and has continuously and exclusively occupied the premises for such purposes from that time down to the present. They were never occupied or improved by any one else, the county being the first and only occupant. On the 4th of May, 1858, the county made application to the trustee for a deed, claiming to be entitled to a deed of conveyance in fee-simple. On the 17th of September, 1858, the trustee executed to the county an absolute and unconditional deed in fee of the block or square, in which it is recited, among other things, that proceedings had been had by virtue of and pursuant to the act of the legislative assembly of the territory of Minnesota, entitled "An act prescribing rules and regulations for the execution of the trust arising under the" aforesaid act of congress, (Laws 1855, c. 7; Gen. St. 1878, c. 42,) by which it had been duly determined that the county of Blue Earth was the corporate body for whom the land in question was held in trust, and who owned and were entitled to a deed of conveyance of the title in fee.

We think it clear that, under this state of facts, the county of Blue Earth is the owner in fee-simple absolute of the premises in question. There is nothing in the evidence to show that these so-called "town proprietors" ever acquired or had any interest or estate whatever in this square, or that they ever were occupants of it, within the meaning of the "Town-Site Act;" nor, in fact, that they ever dedicated it to public uses. Neither is there anything tending to show that the county ever entered or held under any dedication. According to the evidence in this case, the county was the actual and only occupant of the square, and claimed and received from the trustee a deed in fee-simple absolute, under the provisions of the act of congress, which it could only do as an actual occupant. This vested the

absolute title in the county, and is conclusive upon that question, unless it be in an action brought directly for the purpose of having the conveyance to the county set aside as having been executed by the trustee in violation of the trust, for the purposes of which the title was vested in him. There is nothing in the act of congress to prevent a county, or any other municipal corporation, if an actual occupant of any part of a town-site, from being a beneficiary under its provisions. Any "occupant," capable of acquiring title to real estate, might be a beneficiary under this act. The statute of the territory, enacted in pursuance of the act of congress, and to carry out the trust created thereby, uses the words "persons," "associations" or "company," in defining those entitled to its benefits, and, according to another provision of statute, the word "person" may apply to bodies politic and corporate. Under our statutes then, as now, counties were authorized to purchase and hold real estate for the use of the county, and to sell and convey the same. Our conclusion, therefore, is that the county of Blue Earth acquired as perfect and absolute a title to this square, and has the same power to alienate it, as if it had purchased it and paid for it; and that it does not hold a mere limited and special interest, charged with some public trust, under the supposed dedication by the ten original "town proprietors." This being so, it follows that the basis for estimating the damages or compensation to which the county was entitled, adopted by the court below, was correct, viz., the decrease in the value of the entire tract caused by the imposition of this easement in favor of defendant.

This, in effect, disposes of all the points made by defendant, except, perhaps, the following: Certain witnesses in behalf of plaintiff testified, in chief, as to how much, in their opinion, the block would be worth without the railroad, and then how much it would be worth with the railroad constructed. Upon cross-examination by defendant, as to the basis upon which they arrived at these estimates, it appeared that, in arriving at these values and differences in values, they adopted in their own minds, as a basis for their calculations, the process of dividing the block into lots for residence purposes, and then calculating the market value of the property by lots. On this appearing, defendant moved to strike out their evidence as incom-

petent, because this was not a proper basis of calculation. The court denied the motion, and defendant excepted. We think the court was right. It appeared that this was city property, capable of being subdivided into lots, and used for residence purposes in case it should be sold. The adjacent property was thus divided, and usually sold by the lot. It is a well-understood fact that in towns and cities values are usually fixed at so much a lot, or, in large cities, at so much a front, or even at so much a square foot, and we can see no impropriety in a witness going through such a mental process in order to arrive at the value of the whole tract. In fact, such a process might, in some instances, be necessary, for city property is not usually rated or quoted at so much a block or acre, but at so much a lot, or front or square foot.

The fact that the county could only hold and use its property for county purposes, and could not itself devote it to residence purposes, does not affect the case. It has the right to sell it, and is entitled to receive as the measure of its compensation the same as any other owner, which would be whatever the property would be lessened in market value, not simply for the use to which it was then actually put, and upon the assumption that it would always continue to be put to that use and no other, but whatever it would be diminished in market value for any purpose to which it might ordinarily be put and for which it was suited. An owner is entitled to such sum as the property is worth in the market—that is, to persons generally. Mills, Eminent Domain, § 168.

The court, in its charge to the jury, instructed them that this evidence informed them how witnesses made their estimates in arriving at market values, and which may or may not have been the best methods, which was a matter for the jury to consider; but that they must bear in mind that the ultimate question for their consideration and finding was the value of the entire block as it stands, and the extent to which that value has been diminished. This put the question clearly and correctly before the jury, so as to prevent any misconception on their part as to the basis of their verdict.

The defendant also excepted to the admission of evidence as to the noise, etc., of passing trains, and the inconvenience and inter-

ruption in the use of the property resulting therefrom. This was competent as bearing upon the question of the diminished value of the property. *Bangor & Piscataquis R. Co.* v. *McComb*, 60 Me. 290; Mills, Eminent Domain, §§ 162, 163, 166; *Colvill* v. *St. Paul & Chicago Ry. Co.*, 19 Minn. 283; *Curtis* v. *St. Paul, Stillwater & T. F. R. Co.*, 20 Minn. 28. The court, in that connection, instructed the jury that such evidence was not admissible for the purpose of assessing damages for the inconvenience suffered by the citizens or the public; but that it was received as indicating the nature and effect of the ordinary operation of defendant's road, but only in so far as such facts go to affect the value of the property; for it was for the diminished value of the property, by reason of locating the road across the land, that the plaintiff was entitled to recover. As this action was brought to recover damages for defendant's trespass upon the property during some ten years preceding the commencement of this action, this instruction was, at least, sufficiently favorable to defendant.

The defendant also objects to the rule adopted by the court below, in fixing the time of trial as the date at which the value of the property and the amount of plaintiff's compensation should be fixed, instead of the date of the entry and construction of their road some ten years previously. We do not think the record shows that any such point was made in the court below; but assuming that it was, the rule adopted was the correct one. The universal rule laid down in the books is that when property is taken for public uses by the exercise of the right of eminent domain, the compensation must be fixed as of the date of taking of the property; that is, at the time the public make the appropriation. *Isom* v. *Miss. Cent. R. Co.*, 36 Miss. 300. That this means the time of taking and appropriating the property by appropriate legal proceedings, and not the time of some previous wrongful and tortious entry, necessarily follows from the constitutional provision which requires compensation to be *first* made. Until that time the property still belongs to the original owner. The fact that a railroad company has, in advance of proper condemnation proceedings, committed a trespass, and wrongfully taken possession of the land, gives it no right to insist that such proceedings, subsequently

instituted, shall relate back to the date of the trespass. In accordance with the general doctrine on this subject, this court has adopted, as a convenient practical rule, that compensation must be estimated as of the time of the award of the commissioners. *Winona & St. Peter R. Co.* v. *Denman*, 10 Minn. 208, (267.) In the present case they were properly estimated as of the time of the trial.

Order affirmed.