THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, *Appellant*, v. THE RANDOLPH TOWN-SITE COMPANY.

DIVISION TWO.

1.  Condemnation Proceeding: ASSESSMENT OF DAMAGES : RAILROAD.  The assessment of damages in a condemnation proceeding by a railroad for a right of way should be based on the value of the land at the *time* of the assessment.

2.  —— : —— : ——.  The foregoing rule is applicable, notwithstanding the company may have previously entered and constructed its road on the land with the knowledge of the owner and without active opposition from him, and although the land may have greatly increased in value after such entry and construction of the road.

3. —— : —— : COMMISSIONERS : INSTRUCTIONS. The award of the commissioners will not be set aside because of the failure of the court to instruct them as to their duties concerning the assessment of damages, where neither party requested that instructions should be given.

4. —— : —— : DESCRIPTION OF LAND TAKEN. The land appropriated is sufficiently identified in a report of the commissioners which describes it as "a strip, belt or piece of land one hundred feet in width extending from the east side to the west side over and across said land through the center of said strip, belt or piece of land ; the center line of the railroad of the Chicago, Milwaukee & St. Paul railway as now surveyed and located, so as to leave one-half in width on each side of said center line."

5. —— : FAILURE OF PARTIES TO AGREE : WAIVER. The railroad cannot object that the court acquired no jurisdiction of the condemnation proceeding because no efforts at agreement had been made by the parties, the company's petition having averred that such efforts were made and no issue having been tendered by defendant on that question.

6. —— : REPORT OF COMMISSIONERS, OBJECTIONS TO : JURY TRIAL. Either party has the right to question the report of the commissioners by exception or by demanding a jury, or by both, and the right to a trial by a jury is waived by a failure to demand it.

*Appeal from Clay Circuit Court.*—HON. J. M. SANDUSKY, Judge

AFFIRMED.

*E. J. Broaddus* for appellant.

(1) The value of the land is to be determined by the date of the appropriation and not of the condemnation. *Daniels v. Railroad,* 41 Iowa, 52 ; *Jones v. Railroad,* 14 Am. & Eng. R. R. Cases, 217 ; *Cohen v. Railroad,* 34 Kan. 167 ; *Railroad v. Hays,* 14 Am. & Eng. R. R. Cases, 180 ; Mills on Em. Domain, sec. 175 ; Pierce on Railroads, 209 ; *Dickenson v. Inhabitants,* 13 Gray, 546 ; 7 Black, 209 ; 61 Pa. St. 369 ; 20 Pa. St. 240 ; *Whitman v. Railroad,* Allen, 313. (2) The original petition was sufficient, and the only damages to be

assessed were for establishment, erection and mainte-
nance of appellant's road. R. S. 1879, secs. 892, 894;
*Ring v. Bridge Co.*, 57 Mo. 498 ; *Powers v. Hurmert*,
51 Mo. 138; *Mueller v. Railroad*, 31 Mo. 262 ; *Soulard
v. City*, 36 Mo. 552 ; *Provolt v. Railroad*, 57 Mo. 263 ;
*Provolt v. Railroad*, 69 Mo. 633 ; *Baker v. Railroad*,
57 Mo. 274; *Allen v. Railroad*, 84 Mo. 651. (3) If
original petition was defective, court should have per-
mitted amendment and erred in striking it out. R. S.
1879, secs. 896, 3567, 3585 ; *Carr v. Moss*, 87 Mo. 447 ;
*Railroad v. Brick Co.*, 85 Mo. 329 ; *Railroad v. Camp-
bell*, 62 Mo. 590 ; *Railroad v. Story*, 96 Mo. 622. May
be amended when necessary to a fair trial. *Railroad v.
Allen*, 22 Pac. Rep. 605 ; *Railroad v. Strange*, 23 N. W.
Rep. 432 ; *Esclick v. Mason City*, 39 N. W. Rep. 700.
(4) The commissioners were not instructed in their
duty in estimating the damages and benefits if any.
*Lee v. Railroad*, 53 Mo. 180. (5) Report of commis-
sioners contains no description of the premises con-
demned. R. S. 1879, sec. 894; *Railroad v. Kellogg*, 54
Mo. 337 ; *Railroad v. Story*, 96 Mo. 621 ; *Railroad v.
Carter*, 85 Mo. 457. (6) The court had no jurisdiction
because there was no effort at any argument between
company and respondent. *Railroad v. Campbell*, 62
Mo. 585 ; *Ells v. Railroad*, 57 Mo. 200 ; *Moses v.
Dock Co.*, 84 Mo. 245 ; *In re Lind v. Clemens*, 44 Mo.
540 ; *Cunningham v. Railroad*, 61 Mo. 36 ; *Leslie v.
City*, 47 Mo. 478 ; *Anderson v. City*, 47 Mo. 484.
(7) When exceptions were filed to report, the court
should have set the same aside, and called a jury and
tried the cause *de novo*, and this right was not waived.
*Railroad v. Story*, 96 Mo. 620 ; *Railroad v. Almeroth*,
13 Mo. App. 91.

*Prosser Ray* and *A. M. Hough*, also, for appellant.

1    The rule assessing damages as of the date of
the award is not the correct one    It is opposed to the

analogies of the law drawn from the rules in other actions affording compensatory relief. ( 2 ) The date of the filing of the petition is a better date. *South Park v. Dunlevy*, 91 Ill. 49 ; *Burt v. Merchants' Co.*, 115 Mass. 1. ( 3 ) But neither the date of the award nor the date of the filing is the proper date. The evidence shows that plaintiff entered upon the land for the purpose of permanently appropriating it for a public easement in the fall of 1880, and that its possession was rightful because made with the owner's knowledge and consent, and with a waiver of prior compensation. ( 4 ) Possession of the land being rightful was, in Missouri, an irrevocable license, after plaintiff's expenditure of money and labor thereunder in the construction of the railroad, and the owner could not maintain ejectment against the plaintiff. *Provolt v. Railroad*, 57 Mo. 256 ; *Baker v. Railroad*, 57 Mo. 265 ; *Hosher v. Railroad*, 60 Mo. 329 ; *Kanaga v. Railroad*, 76 Mo. 207. ( 5 ) If the possession was obtained under any specific agreement, the owner could resort to his action for specific performance, and, if there was simply a consent to the appropriation and a waiver of prior compensation, he would have his common-law action for the damages, as of the date of the appropriation. ( 6 ) " To be exactly just, the compensation should be estimated as of the time of the taking." Lewis, Em. Domain, sec. 477 ; *Parks v. Boston*, 15 Pick. 198. ( 7 ) In states which require prepayment as in this, the rule ought to be the same, where the owner waives prepayment and consents to the appropriations for a permanent public easement. Assessment should be of the value at the time of taking. Mills, Em. Domain, sec. 174 ; *Hosher v. Railroad*, 60 Mo. 329 ; *Patterson v. Boone Co.*, 3 Dill. 465 ; *Low v. Railroad*, 63 N. H. 557 ; *Burt v. Ins. Co.*, 115 Mass. 1 ; *McAulay v. Railroad*, 33 Vt. 311 ; *Cory v. Railroad*, 100 Mo. 282. ( 8 ) The order is fatally defective in not specifying any date whatever for admeasuring the damages and in not specifying any of

the elements of damages. The order should, as in the common-law writ, *ad quod damnum*, contain definite directions as to what the commissioners should consider. Lewis, Em. Domain, secs. 401–2 ; *Heise v. Railroad*, 62 Pa. St. 67 ; *Epps v. Cralle*, 1 Munford, 258 ; *Chesapeake & O. Co. v. Key*, 3 Cranch C. C. 599 ; *Lee v. Railroad*, 53 Mo. 180 ; *Railroad v. Chrystal*, 25 Mo. 546. ( 9 ) The court should have permitted appellant to amend its petition. Lewis on Eminent Domain, section 361, says "The practice of allowing amendments should find favor with the courts, since it saves time and expense both to the public and parties interested." *Railroad v. Church*, 53 Pa. St. 445 ; *Windham v. Litchfield*, 22 Conn. 226 ; *Mullholin v. Thomas*, 7 Ind. 165 ; *Russell v. Turner*, 62 Me. 496. Amendments are allowed increasing the amount of damages, etc. Lewis, Em. Dom., sec. 361. Why not, then, allow allegations which will decrease them ? *Railroad v. Burmell*, 81 Pa. St. 414 ; *Railroad v. Jones*, 103 Ind. 386.

*Peak, Yeager & Ball* for respondent.

( 1 ) The compensation to be paid respondent by the appellant is the valuation of the land at the filing of the petition, or at the time appraisement is made by the commissioners. Upon rendition of the verdict by the commissioners, and payment of the amount by appellant, the title to the land is immediately vested in appellant. R. S. 1879, sec. 894. The petition alleges that the land is owned by respondent, and that appellant has located, surveyed and staked out its extension over and across said lands, and seeks to appropriate said land to appellant's use. It must follow, therefore, that the compensation to be paid respondent is the value of the land at the time these proceedings were had. 2 Wood on Railways, pp. 902, 910, 912 ; *Railroad v. Bishop*, 10 N. E. Rep. 372 ; *Schrieber v. Railroad*, 115 Ill. 340 ; *Dupuys v. Railroad*, 115 Ill. 197 ; *Railroad v. Hopkins*,

90 Ill. 316; *Commissioners v. Dunlevy*, 91 Ill. 49; *Lyon v. Railroad*, 42 Wis. 538; *Railroad v. Orr*, 8 Kan. 420; *Reed v. Railroad*, 25 Fed. Rep. 886; *Williams v. Railroad*, 60 Miss. 689; *Gray v. Railroad*, 81 Mo. 126. (2) The report of the commissioners and the judgment of the lower court should not be set aside, unless the court is thoroughly satisfied that the commissioners have erred in the principle upon which they have made their appraisement. *St. Louis v. Lannigan*, 97 Mo. 175. (3) Under the original petition filed herein, plaintiff would not be permitted to introduce evidence showing that plaintiff had taken possession of the land before the institution of these proceedings with the knowledge and consent of the defendant. Such proof would contradict the allegations in the petition, and this the plaintiff is not permitted to do. It can show nothing inconsistent with the facts set out in petition. *Edwards v. De Bonney*, 51 Mo. 129; *Kuhn v. Weil*, 73 Mo. 213; *Ramsey v. Henderson*, 91 Mo. 560; *Wilson v. Abbott*, 89 Mo. 537; *Lennox v. Harrison*, 88 Mo. 491. (4) No amended petition could be filed in this case. The statute provides for no amended petition, and the statute must be strictly pursued. *Railroad v. Calkins*, 90 Mo. 538; *Gray v. Railroad*, 81 Mo. 135; *St. Louis v. Gleason*, 93 Mo. 33. (5) The amended petition filed in this case is not an amended petition, but an entirely new cause of action. It sets out a different state of facts from those contained in the original petition, and presents new issues to be tried. The motion to strike out was, therefore, properly sustained. *Scoville v. Gleason*, 79 Mo. 449. (6) The appellant in this case having elected in the first instance to have the damages assessed by commissioners, and not by jury, and having failed upon the report of the commissioners to ask for a jury trial, must certainly be held to have waived its right to a trial by jury, *Railroad v. Story*, 96 Mo. 619; *Railroad v. Brick Co.*, 85 Mo. 307. (7) The report of the commissioners contains a

sufficient description of the land, and states that a plat of the land is filed with the report. This is sufficient. *Railroad v. Story*, 96 Mo. 611 ; *Cory v. Railroad*, 100 Mo. 282. (8) The petition in this case states that the plaintiff cannot agree with the defendant as to the amount of compensation to be paid. This was sufficient, although there had been no evidence offered of a failure to agree. *Cory v. Railroad*, 100 Mo. 282.

MACFARLANE, J.—This is a proceeding for the condemnation of the right of way for plaintiff's railway through the southeast quarter, section 9, and a part of the northwest quarter of the southwest quarter, of section 10, township 50, range 32, in Clay county, which belonged to defendant at the time the proceedings were instituted. The petition was filed on the sixth day of August, 1887.

The petition, after stating the incorporation of plaintiff and defendant, that plaintiff was engaged in the construction of a railroad from Ottumwa, Iowa, to Kansas City, in a southwesterly direction, through Clay county, and desired to procure the right of way therefor ; that the road as located passed through the land of the defendant, describing the land, made the following averments :

"That your petitioner desires to construct its road over the lands hereinabove described, of the defendant named herein, and for that purpose your petitioner desires to obtain the right of way, consisting of strip, belt or piece of land, one hundred feet in width, extending over and across said lands, through the center of which said strip, belt or piece of land the center line of the railroad of your petitioner is now surveyed, located and staked out, so as to leave one-half in width on each side of said center line. That your petitioner has not been able to acquire title to the land or right of way for the reason that it and the defendant, the

Randolph Town-Site Company, cannot agree upon the proper compensation to be paid.

" Your petitioner herewith annexes to this petition a plat or map showing the route of its proposed railroad over and across the lands herein described, and the strip, belt or piece of land which it desires to take for its right of way, which is made a part of this petition.

" Wherefore your petitioner prays the appointment of three disinterested freeholders, as commissioners, to assess the damages which such owner may sustain in consequence of the appropriation of said strip, belt or piece of land, and the establishment, erection, maintenance and operation of said railroad over and upon the same, and to return a plat of the land condemned for the right of way for said railroad, and to file said plat and report in the office of the clerk of said court.

" And your petitioner further prays, if no valid objection be made to said report, that the court enter judgment in favor of said owner against the petitioner for the amount of the damages assessed, and make an order vesting in your petitioner the title to the lands described in such plat or report."

An order was made appointing commissioners on the nineteenth day of August, 1887.

On the twenty-fifth day of August, 1887, the commissioners filed their report, which was under oath. This report recited their appointment as commissioners, gave a description of the land affected, and a description of the land to be appropriated, as follows : "A strip, belt or piece of land, one hundred feet in width, extending from the east side to the west side, over and across said land, through the center of which said strip, belt or piece of land the center line of the railroad of the Chicago, Milwaukee & St. Paul railway is now surveyed and located, so as to have one-half in width on each side of the center line." The report further recited the amount of damages assessed, that they took into consideration the value of the land, and the advantages

and disadvantages of the railroad to the same, and filed a plat showing the location of the road over the land, making the plat a part of the report.

Within ten days after the report was filed, plaintiff filed exceptions thereto setting forth the usual objections and in addition thereto the following: "*Fifth.* Because the commissioners erred in estimating the damages to the land from a pretended valuation of the same on the twenty-fifth day of August, 1887, instead of its real and marketable value on the twenty-fifth day of August, 1886, at the time the same was taken by petitioner by consent of defendants and its agents, and with the consent of the owners."

On the twenty-seventh day of February, 1888, plaintiff filed an amended petition, having in addition to the averments in the original, substantially, the following: That it located and built its roadbed over the land in September, 1886, with the consent of one E. L. Martin, one of the owners thereof, acting with authority from the other owners, without requiring prepayment of compensation; that such consent was given pending certain negotiations for locating a depot on said land; that in July, 1887, said Martin and others formed the defendant corporation and the title in said land then became vested in it; that it was not able to agree with defendant on the amount of compensation, and that since September, 1886, the land had greatly increased in value, but plaintiff should only be required to pay damages according to the value of the land as it was in September, 1886.

On the same day defendant filed a motion to strike out the amended petition, giving as grounds therefor that the same was not authorized, and was filed out of time, which motion was sustained. The exceptions to the report were heard by the court on the second day of July, 1888.

The evidence on the trial tended to prove that plaintiff commenced grading on this land in September,

1886 ; that it was completed that fall ; that the land was then worth $150 per acre ; that when the proceedings to condemn were commenced it was valued at from $2,000 to $2,500 per acre, and that defendant was allowed $2,000 per acre for the land taken. There were proved unsuccessful negotiations, in February, 1887, between the plaintiff and some of the owners, about the location of a depot on the land, and about filling some ravine with the waste dirt. The evidence did not show that actual permission was given to plaintiff to grade the road over the land, but no objection was made thereto.

After the evidence had been heard the court gave a declaration of law that, "Under the petition the commissioners properly assessed the damages from the standpoint of the value of the land at the time they made their assessment, and not from the standpoint of the value at the time the company entered upon the land and constructed their road."

The exceptions were overruled and judgment rendered condemning the land for right of way and for the damages assessed by the jury. The plaintiff filed its motion for a new trial, which, being overruled, it appealed to this court.

I. A number of errors have been assigned as grounds for a reversal of the judgment of the circuit court. The most important and most difficult of these grow out of the rulings of the court upon the question as to the proper date at which the assessment of the damages should have been made. The commissioners, in determining the compensation to which the defendant was entitled, estimated the value of the land taken, as of the date of the proceedings to condemn. Appellant insists that the court erred in this, and that the value of the land should have been taken as it was at the date appellant entered thereon and commenced grading the road. The roadbed was completed over defendant's land in the fall of 1886, at which time the land was

Chicago, M. & St. P. Ry. Co. v. Randolph Town-Site Co.

valued at $150 per acre. The proceedings to condemn were commenced in August, 1887, at which time the value of the land had fabulously increased to an estimated value of from $2,000 to $2,500 per acre. To determine the correct rule for estimating damages in such cases is a question of great practical importance to the parties in interest, and one not without difficulty in a theoretical point of view.

Counsel insists that the value of the land should have been estimated, as it was at the date of the appropriation to its own use by the railroad company, and not at the date of its condemnation. The proposition is correct, if there is in this case a distinction between the dates of the appropriation and condemnation of the land.

The rule, when not controlled or modified by statutory provisions, undoubtedly is, that the damages, resulting to the land-owner from the exercise of the right of eminent domain by a railroad corporation, in taking and appropriating his land, should be estimated as of the date of the taking, or appropriation. This rule is analogous to the one recognized in estimating damages for conversion of personal property, and is generally, if not universally, accepted. Mills on Em. Dom., sec. 174; Pierce on Railroads, 209, and authorities cited by them.

While there has been but little, if any, disagreement on this general rule, the question that has given rise to all the difficulty, in the decided cases, is to determine the date at which the taking or appropriation takes place. This is the difficulty in the case at bar. Appellant urges the proposition, that the taking was complete, when entry was made on the land and grading was commenced.

The question, as to when the appropriation becomes complete, in the decided cases, has depended largely upon the particular grant of the right, or of the power to exercise the right, of eminent domain, in the different

jurisdictions, and upon the conditions upon which its exercise depends. The right of one to appropriate to his own use the property of another, without his consent, is a most extraordinary power, is contrary to all principles of natural rights, and cannot be exercised except from public necessity and for public uses. That all the proceedings and conditions, prescribed by law, for its exercise, must be strictly construed and followed, is the general rule applied in the construction of laws delegating such extraordinary rights and powers to corporations. "There is no rule more familiar, or better settled, than this, that grants of corporate power, being in derogation of common right, are to be strictly construed ; and this is especially the case where the power claimed is a delegation of the right of eminent domain, one of the highest powers of sovereignty pertaining to the state itself, and interfering most seriously and often vexatiously with the ordinary rights of property." *Currier v. Railroad*, 11 Ohio St. 231, *loc. cit.* ; Cooley, Cons. Lim. 656, and authorities cited. The same distinguished jurist says ( on page 657): "So high a prerogative as that of divesting one's estate, against his will, should only be exercised where the plain letter of the law permits it, and under a careful observance of the formalities prescribed for the owner's protection." *City of St. Louis v. Gleason*, 93 Mo. 34 ; *Anderson v. Pemberton*, 89 Mo. 64.

The application of these principles will aid us in ascertaining, under the constitution and statutes of this state, when, in the exercise of eminent domain, by a railroad company, the appropriation of the land takes place. Neither the constitution nor laws, in express terms, designate any specific act or proceeding which conclude and make complete and perfect the appropriation, as is the case under the laws of some states, as Indiana and Massachusetts. The constitution and statutes of this state do, in most express and emphatic terms, prescribe conditions that precede such appropriation and

must be complied with before the taking can be complete.

The payment of compensation is made a positive and unconditional condition that must precede the appropriation. Section 21 of the bill of rights, provides : " That private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law ; and until the same shall be paid to the owner, or into court, for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested."

It would be difficult to express, in plainer terms, what must be done before the taking is complete. The statute provides, that after the commissioners have made their assessment, and filed their report, which is to be done forthwith, the company shall pay to the clerk of the court the amount thus assessed ; and on making such payment it shall be lawful for such company to hold the interest in the property so appropriated, for the uses aforesaid. R. S. 1879, sec. 894. The statute must be construed in the light of the constitution and consistently with it. The words, " so appropriated," as used in the statute, cannot be held to imply that the appropriation had taken place at some preceding step in the proceeding, but must be referred to all the proceedings crowned by the payment of the compensation, —the last and essential act in the condemnation.

Thus, it will be seen, that the constitution and statute laws of the state, the authority delegating to railroad corporations the right of eminent domain, a part of the sovereignty of the state, point out with great particularity what must be done before the rights of the owner in his property shall be divested. The requirement that compensation shall be first paid is impressed upon the right to appropriate, and is an

imperative prerequisite thereto. The damages assessed shall be paid to the owner, or into court for his use, and until that is done the company has acquired no right to the land and the proprietary rights of the owner therein are not divested or affected. The condemnation proceedings in this state and under its laws must necessarily precede the appropriation, at least, to the act. of paying the compensation.

When counsel for appellant contends that the damages should be assessed as of the date of the appropriation and not of the date of the condemnation, he must refer the appropriation to some act other than one exercised under the right of eminent domain. He must refer the appropriation to the physical taking possession of the land, and the condemnation proceedings intended to legalize the previous physical taking. It has been seen that there can be no appropriation without condemnation and that the latter must precede the former. Appellant is certainly wrong then, at least in the use of terms.

The land could not have been "taken or appropriated" in the fall of 1886, because these terms imply an absence of consent on the part of the owner, and in such case, as has been seen, compensation must be paid before the taking is complete. Without being technical as to the use of terms, we see that plaintiff's contention is, that the facts in this case authorize and demand a departure from the general rule, requiring the value of the land, as it was when the damages were assessed, to be taken, and that the value should be taken as at the date of the entry by plaintiff.

There is no doubt that the right of prepayment of damages may be waived by the land-owner, and a license, express or implied, granted by him to the company to enter on the land and construct the road; but the right so waived by the owner and that so acquired by the company, unless sufficient to constitute

a contract, is not such a compliance with the constitution, or such waiver of rights thereunder, as will constitute an appropriation under its provisions. It is not sufficient to constitute a taking that the company get a foothold upon the land, either as a trespasser, or a licensee. A mere physical taking is not what was contemplated by the constitution. The taking must be under judicial sanction and after payment of compensation as pointed out and required by law. "A railroad corporation has no right to take the lands of any person, for the construction of its road, except under and in strict compliance with the provisions of the statutes giving the authority and prescribing the course of proceeding." *Hampden Paint Co. v. Railroad*, 124 Mass. 118. "The universal rule laid down by the books is that, when property is taken for public uses by the exercise of the right of eminent domain, the compensation must be fixed as of the date of taking of the property; that is, at the time the public make the appropriation. That this means the time of taking and appropriating the property by appropriate legal proceedings, and not the time of some previous wrongful and tortious entry, necessarily follows from the constitutional provision which requires compensation to be first made. Until that time the property still belongs to the original owner. The fact that a railroad company has, in advance of proper condemnation proceedings, committed a trespass, and wrongfully taken possession of the land, gives it no right to insist that such proceedings, subsequently instituted, shall relate back to the date of the trespass." *County v. Railroad*, 28 Minn. 503; *Isom v. Railroad*, 36 Miss. 300; *Dearborn v. Railroad*, 24 N. H. 179; *South Park Com'rs v. Dunlevy*, 91 Ill. 49; *Railroad v. Hays*, 14 Am. & Eng. R. R. Cases (Neb.) 178; *Railroad v. Orr*, 8 Kansas, 419; *Driver v. Railroad*, 32 Wis. 569; Cooley on Con. Lim. 694; *Railroad v. Land Co.*, 14 A. & E. R. R. Cases, 194.

In the case of *Cook v. Park Com'rs*, 61 Ill. 121, the court, in considering the application of the word "taken," as used in the constitution of Illinois, which is similar to that of this state, uses this language: "The taking of the land, the appropriation of it, prior to the performance of the prerequisite of the statute would be utterly inconsistent with the obvious meaning of the words of the law. If the land cannot be entered upon or used before payment of the compensation, it cannot with any propriety of language, or with reference to the common signification of the term, be said to be taken before payment."

It is very clear from the terms of the constitution, from reason and authority, that no appropriation of the land or permanent right to its use could be effected except either by condemnation or contract, unless a simple license or permission to enter would be sufficient to give that right.

Upon hearing exceptions to the report of the commissioners, plaintiff was permitted, very properly, to show all the facts and circumstances under which the entry on the land was made. There is nothing in the evidence tending, in the remotest degree, to prove that plaintiff entered upon the land in the fall of 1886, under any agreement with the owners, that the right to the easement should vest at that date, or that the payment of compensation should be postponed to a subsequent day. There was no agreement of any kind shown. Then plaintiff acquired no right to the land in 1886 under any contract.

The evidence did not show that the owners of the land were given permission to enter thereon. One of plaintiff's witnesses testified that one Parker gave permission to plaintiff to proceed with the work on the land, but it was not shown that he was interested in the land, or that he had authority from those interested to give their consent. It was sufficiently shown that the

owners knew of the entry and made no active opposition thereto.

All plaintiff then has, upon which to base his claim of right, in the fall of 1886, was the physical entry on the land without opposition or expressed objection from the owners. What right did defendant waive? It is true that defendant could have enjoined the entry, or prevented it by physical force, but was it necessary to do this in order to preserve his proprietary rights in his property, or his right to compensation? It seems to me the only right waived was the right to prevent, by legal or physical means, the entry on his land before payment of damages. We think all the authorities cited by appellant bear out this idea and go no further. *Provolt v. Railroad*, 57 Mo. 259 ; *Ring v. Bridge Co.*, 57 Mo. 497 ; *Mueller v. Railroad*, 31 Mo. 262 ; *Iberlard v. City of St. Louis*, 56 Mo. 552 ; *Baker v. Railroad*, 57 Mo. 274 ; *Allen v. Railroad*, 84 Mo. 653.

After the public has acquired rights in a road already constructed and in operation, a different question would arise as to the extent and effect of the waiver of the land-owner. Often the corporation secures advantages incidentally, by invoking the rights of the public, as was done in some of the cases cited. None of the well-considered cases of any court hold, that the mere entry on land and the construction of the road, under an implied license of the owner, would estop the owner from thereafter asserting all the rights and remedies guaranteed him by the constitution.

A different rule would be wholly inconsistent with principles of right and justice. The corporation could abandon its location even after damages were assessed. R. S. 1879, sec. 594. There would not exist that mutuality which would give the land-owner a right to damages regardless of the right of future abandonment by the company. The statute only gives to the corporation the right to initiate the proceedings to condemn. If

circumstances are such as to make a postponement neces-
sary or desirable, and the land-owner consents to a
previous entry, there can be no injustice in fixing the
compensation at the date of the actual appropriation,
the date contemplated by the constitution as the time
for making compensation.

Such silence and inaction, on the part of defendant,
as is shown in this case, may estop it to claim the
improvements put upon the land, or possibly to reclaim
the land itself in lieu of damages, but there could be no
estoppel to claim its proprietary rights to the land, and
his constitutional rights to compensation therefor before
they could be divested. The land was not taken within
the meaning of the constitution until the money was
paid into court, and the compensation was properly esti-
mated upon the value of the land at the time the assess-
ment was made by the commissioners.

The question does not arise, in this case, whether
plaintiff could deny a taking at any time, between its
entry and the assessment, and is not considered or
determined. The court committed no error, then, in
the declaration of law given fixing the time of assessing
damages, as the time at which the value of the land
should be reckoned; and plaintiff was not injured by
the action of the court in striking out his amended
petition in view of our conclusions as to the proper date
for fixing the amount of compensation.

II. It would have been proper for the court to
have instructed the commissioners as to their duty, in
assessing the damages, and as to the proper rules, by
which they should have been governed, in making their
estimate. The abstract of record, furnished by appel-
lant, fails to show that any instructions were asked.
Doubtless, they would have been given had either party
made a request for them. The court, in civil cases, is
not required to give instructions, whether asked or not,
as is the rule in criminal cases. It was not shown upon

hearing the exceptions that the commissioners committed any error in making their estimates ; on the contrary it appeared that only the value of the land actually taken was allowed as damages, and that, at the lowest estimate placed upon it.

III. It is objected that the report of the commissioners contains no description of the premises condemned. The description describes the tract of land through which the road runs and gives the following description of the part appropriated : "A strip, belt or piece of land, one hundred feet in width, extending from the east side to the west side, over and across said land, through the center of said strip, belt or piece of land the center line of the railroad of the Chicago, Milwaukee & St. Paul railway is now surveyed, and located, so as to leave one-half in width on each side of said center line." The report also shows that a plat of the road, showing its location through the land, was filed with the petition. The evidence shows that the road had been built across the land before the report was made. This description is much more specific than the one approved by this court in the case of *Railroad v. Story*, 96 Mo. 620. The road itself is a sufficiently designated monument to make the description sufficiently specific. *Cory v. Railroad*, 100 Mo. 288.

IV. The next objection is that the court acquired "no jurisdiction for the reason that no efforts at agreement were made by the parties before the condemnation proceedings were commenced." The petition states that such efforts were made and no issue was tendered on the question by defendant. It must be taken that the allegation of the petition was true. It was not necessary that this averment should be sustained by oral evidence. *Cory v. Railroad, supra*.

V. The only remaining complaint of the appellant that need be noticed is, that it should have been awarded a jury trial to determine the compensation to

which defendant was entitled. The constitution certainly provides that the right of trial by jury shall be held inviolate in this class of cases. If either party had demanded a jury trial it would have been error for the court to have denied the right.

The constitution, in order to insure a speedy assessment of damages, and thus avoid delays in public enterprises, provides that such damages may be assessed, in the first instance, by a board of commissioners. The assessment made by this board is final unless questioned by one party or the other. Either party has the right to question the report by exceptions, or a demand for a jury, or both. A demand for a jury, by force of the constitution, avoids the report of the commissioners, and secures a trial by jury. Without such demand the jury trial will be waived. There is no doubt the constitutional right of trial by jury may be waived. *Railroad v. Story, supra; Merrill v. St. Louis*, 83 Mo. 244; *Jones v. Ins. Co.*, 55 Mo. 342.

No errors appearing in the proceedings of the circuit court, the judgment is affirmed. All the judges of this division concur.