STATE, BY MILES LORD, ATTORNEY GENERAL, v.
WILLIAM MALECKER AND OTHERS.
GERARD'S INCORPORATED, APPELLANT.

120 N. W. (2d) 36.

February 21, 1963—No. 38,492.

*Carroll & Perbix,* for appellant.

*Walter F. Mondale,* Attorney General, *Rolf O. Slen,* Deputy Attorney General, and *Leo W. Cavanaugh,* Special Assistant Attorney General, for respondent.

OTIS, JUSTICE.

The appellant, Gerard's Incorporated, seeks review of an order denying a new trial conditioned on an additur, arising out of the condemnation of property taken for highway purposes by the State of Minnesota. It is the contention of Gerard, the owner, that in testifying to damages its witnesses were entitled to consider the diminution in value of individual lots and to present to the jury the aggregate depreciation of the total number rather than restricting damages to the reduced value of the tract as a whole. The owner further assigns as error the failure of the state's experts to consider facts which the owner claims were essential in arriving at damages, and that an inadequate award thereby resulted.

On the date of taking, March 1, 1960, Gerard owned 110 acres of unimproved real estate in Eden Prairie Township located approximately 5 miles southwest of the city of Minneapolis. The property is divided by County Road No. 60, with 88 acres lying northeast of the road and 22 acres lying southwest. The tract is adjacent ·to the meander line of Bryant's Long Lake, the open water of which is approximately 1,000 feet to the east. Although the court held as a matter of law that the owner had legal access to the lake, the area adjacent to the property is low swampland, making difficult any practical use and access to the open water. Prior to the taking, the property was subdivided into lots and blocks by a plat which had the tentative approval of the township. However, the plat was not filed with the register of deeds and had not been accepted by the Hennepin County authorities. While the streets had been graded and graveled, no sewer, water, or gas was available, and no utilities had been installed other than electricity. At the time of the taking, none of the lots had

been sold. It is undisputed that their highest and best use was for residential purposes. An outstanding private easement for a roadway extended across the property, and at the time of taking it constituted an impediment to the title.

In these proceedings the state has taken in fee 9.57 acres for the construction of a freeway across the northeast corner of the tract. In addition, an easement expiring December 1, 1962, covering 1.47 acres, was acquired for waste. The plan for the highway anticipated an elevation of 15 or 20 feet above grade. It will obscure the view of the lake from a portion of the property, and cuts off all access to it.

The amount of damages awarded by the commissioners appointed by the court was $20,000, from which award both the owner and the state appealed, the state claiming the maximum damages were $6,500, and the owner claiming damages in the sum of $145,800. The jury brought in a verdict of $7,450[1] which, by additur, was raised to $9,000 as a condition to denying a new trial.

On direct examination, Mr. Earl J. Gerard, one of the officers of Gerard's Incorporated, testified that the value of the whole tract was depreciated by $100,000. In arriving at this figure he stated that he took the aggregate of the damages to each individual lot, there being 131 in all. The court granted a motion to strike this testimony, holding that it did not reflect the correct measure of damages, and stated:

"* * * [W]hat we are concerned with here is the overall value of the entire property and not the value of the individual lots. Put it a different way, what we are concerned with is what might be called the *wholesale* value of this property. That is, selling the entire property

---

[1]No point is made of the failure to comply with Minn. St. 117.14, which states:

"* * * Whenever the state is acquiring property, the jury or court shall show in the verdict or order the amount of the award of damages which is to reimburse the owner and tenant or lessee, for the value of the land taken, and the amount of the award of damages, if any, which is to reimburse the owner and tenant or lessee for damages to other property involved. * * *"

4

as one big unit rather than selling the individual lots separately, * * * ." (Italics supplied.)

Thereupon Mr. Gerard recomputed the damages and reduced his estimate to $68,000. In so doing he again added the values of individual lots to reach the total figure, but apparently discounted the damage to each lot by an arbitrary percentage in order to reflect his understanding of the court's ruling.

■ Gerard takes the position that an owner has the unqualified right to estimate the value of his property and that it was error to question the foundation for its testimony as to damages.[2] It further asserts that it is proper to arrive at values and damages by reference to the aggregate depreciation of individual lots, and cites as authority County of Blue Earth v. St. Paul & S. C. R. Co. 28 Minn. 503, 11 N. W. 73. In that case the issue was whether, in a condemnation proceeding of an unplatted block in the heart of Mankato, the owner's witnesses could arrive at values by mentally dividing the area into lots for residential purposes. The trial court's refusal to strike such testimony was affirmed. In so holding, this court, speaking through Mr. Justice Mitchell, stated (28 Minn. 508, 11 N. W. 75):

"* * * It appeared that this was city property, capable of being subdivided into lots, and used for residence purposes in case it should be sold. The adjacent property was thus divided, and usually sold by the lot. It is a well-understood fact that in towns and cities values are usually fixed at so much a lot, or, in large cities, at so much a front, or even at so much a square foot, and we can see no impropriety in a witness going through such a mental process in order to arrive at the value of the whole tract. In fact, such a process might, in some instances, be necessary, for city property is not usually rated or quoted at so much a block or acre, but at so much a lot, or front or square foot."

We believe the Blue Earth case is correctly distinguished from the case at bar by the decision of the Oregon court in State Highway Comm. v. Deal, 191 Ore. 661, 672, 233 P. (2d) 242, 247.

[2] L'Evesque v. Rognrud, 254 Minn. 55, 58, 93 N. W. (2d) 672, 676.

In refusing to permit testimony with respect to the manner in which the property was susceptible of subdivision, the Oregon court pointed out:

"* * * the land in that case [Blue Earth] was city property, in fact the court house square, while here we are dealing with a remote strip of wild land on the Oregon coast."

An owner may show the highest and best use to which property may be adapted regardless of whether it is so used at the time of taking. Any competent evidence may be considered if it legitimately bears on the market value.[3] However, the dilemma in which the owner here finds itself is pointed up by our decision in Wilcox v. St. Paul & N. P. Ry. Co. 35 Minn. 439, 29 N. W. 148. There the owner sought damages to an entire tract of 10 lots although only 2 of them were directly affected by the condemnation. We held that in the case of unoccupied city property it was error to award damages by reference to any lots except those actually condemned. In the instant case, if we were to treat with the property on a lot-by-lot basis, it would seem to follow that the jury should consider only the damages resulting to the 8 lots taken, and that the owner would not be entitled to compensation for the adverse effect of the condemnation on the remaining 123 lots. However, following the great weight of authority, we are of the opinion that the court was correct in confining a consideration of damages to what the court described as the "wholesale value" of the entire tract as distinguished from a computation based on the aggregate damage to individual lots.

In somewhat analogous situations, where acreage *without* a subdivision is condemned, the courts have uniformly refused to permit an owner to estimate damages on the basis of lots and blocks platted for the purposes of trial. The Texas court applying this rule in Lower Nueces River Water Supply Dist. v. Collins (Tex. Civ. App.) 357 S. W. (2d) 449, 452, stated:

"* * * [T]he normal reaction of the jury was to see how much

---

[3]King v. Minneapolis Union Ry. Co. 32 Minn. 224, 226, 20 N. W. 135, 136.

profit the owners could make, over and above expenses, by selling the lots *at retail*." (Italics supplied.)[4]

Pennsylvania has dealt with the problem in a long line of cases beginning with Pennsylvania S. V. R. Co. v. Cleary, 125 Pa. 442, 17 A. 468. The court there stated that the jury was not to inquire into what a speculator might be able to realize out of a resale in the future, but was to decide what a purchaser would now be willing to pay for the property in its present condition.[5] In a later case, where property had been actually subdivided at the time of taking, the court held it was not error to exclude the plat from evidence. In Pennsylvania neither an unrecorded plat nor a plat from which no sales have been made is admissible in evidence. The court found it was not error to exclude evidence of the aggregate damage to individual lots in Rothenberger v. Reading City, 296 Pa. 423, 146 A. 104. In a situation quite similar to the instant case, the Pennsylvania court summarized and applied the rules which were suggested in the earlier cases, in Rothman v. Commonwealth, 406 Pa. 376, 178 A. (2d) 605, where 156 acres of farmland were platted into lots "[i]n keeping with the modern trend of attempting to convert the rural world into a residential paradise." It was held not to be error to charge the jury that they could not consider and multiply the value of individual lots in arriving at their verdict.

California has followed the same rule. City of Los Angeles v. Hughes, 202 Cal. 731, 262 P. 737; People v. Johnson, 22 Cal. Rptr. 149.

The rationale for rejecting appellant's contention is well expressed in State v. Tedesco, 4 Utah (2d) 248, 250, 291 P. (2d) 1028, 1029, where the court stated:

"A reading of the testimony of defendants' experts can lead to no other reasonable conclusion than that they arrived at their determination of Parcel 1's value by taking the sales prices of comparable lots in the vicinity, assigning such values to the individual lots involved in

---

[4]See, State v. Willey (Tex.) 360 S. W. (2d) 524.

[5]See, also, Gorgas v. Philadelphia, H. & P. R. Co. 215 Pa. 501, 64 A. 680.

this litigation and adding them up, without considering any cost or expense incident to the sale of each of the lots or the time within which the lots might have been sold. In other words, they assumed that there was a willing seller of 62 lots who had 62 present willing buyers, with nothing left to do but deliver an ownership document, without considering a windfall that would result in favor of the sellers when this condemnation relieved them of paying commissions for the sale of the lots, the completing of streets, paying abstract costs, taxes which daily increase because of customary proration, advertising costs, management and supervision expense and last, but not least, by assuring them a fair profit, all of which no doubt were included in the sales prices of the comparable lots in the vicinity which the experts considered in making their appraisals. Parenthetically, we suggest that no one seriously would contend that a 62-lot tract sold to one person would produce as much as would 62 separate sales to individual home-seekers."

We are in accord with the views of the Utah court.

In the instant case the trial court charged the jury that the measure of damages was the difference in the market value of the entire tract before and after the taking. The court admonished the jury to consider only a single buyer in arriving at market value, stating that market value "does not mean what the individual lots would sell for to numerous individual buyers." We think that the court's ruling and charge were correct and that to hold otherwise would open the door to unlimited vagaries, speculation, and conjecture, of a kind we have consistently condemned.[6] Market value is not to be determined by a myriad of separate transactions where there are numerous buyers negotiating for the purchase of individual lots over a long period of time. What we are concerned with is the price which an individual purchaser would pay for the entire tract in a single transaction, without concerning the jury with all of the uncertain costs of advertising, brokers' commissions, taxes, utilities, grading, and improvements which a protracted lot-by-lot sales compaign would inevitably require.

---

[6]Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 201 Minn. 442, 453, 462, 277 N. W. 394, 400, 404, 124 A. L. R. 897.

■ Gerard assigns as error the inadequacy of the damages. In matters involving the opinion of experts, we have held that jurors have the widest latitude.[7] In the instant case the owner testified to damages in the sum of $68,000, while his real estate expert arrived at a figure of $54,450. Witnesses for the state, who were equally well qualified, gave opinions which ranged from $6,000 to $9,000. The original commissioners' award was $20,000. The appellant complains that witnesses for the state did not consider the effect which a denial of access to the lake would have on the remainder. However, this matter was called to the attention of the witnesses on cross-examination and did not alter their conclusions. The jury had before it all of the elements on which the opinions were based, and we believe there was no error in permitting the opinions to stand.

While the property was platted, we subscribe to the view expressed by the Illinois court in Union Elec. Power Co. v. Sauget, 1 Ill. (2d) 125, 131, 115 N. E. (2d) 246, 249:

"* * * We agree with petitioner's witnesses that the platting of farm property for a subdivision does not, without more, alter the value of such property."

Here no sales had been made, no utilities except electricity were available, the roads were only graded and graveled, there were no improvements on the land, and the denial of access to the lake was of questionable damage in view of the extensive area of swampland between the water and the meander line. Both the court and the jury viewed the premises and were in a better position than the appellate court to evaluate the testimony of the witnesses. Under these circumstances, we are unable to say that the amount of the verdict as modified by the additur was inadequate as a matter of law.

Affirmed.

MR. JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[7] State, by Lord, v. Shirk, 253 Minn. 291, 293, 91 N. W. (2d) 437, 438.