HOUSING AND REDEVELOPMENT AUTHORITY OF THE
CITY OF SAINT PAUL v. CAROL ANN ANDERSON
AND OTHERS.
JAMES H. BOYD, APPELLANT.

211 N. W. 2d 790.

October 12, 1973—No. 43730.

356

*Stringer, Donnelly, Allen & Sharood* and *Philip Stringer,* for appellant.

*Robert V. Dewey* and *Jack Sjoholm, Jr.,* for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, and Kelly, JJ.

OTIS, JUSTICE.

This appeal arises out of a condemnation of five attached dwellings described as row houses or townhouses. The issue is whether evidence of the value of each separate unit was properly excluded under the rule we adopted in State, by Lord, v. Malecker, 265 Minn. 1, 120 N. W. 2d 36 (1963). We have concluded that the Malecker doctrine should not be extended to improved real estate of the character here for consideration and accordingly reverse.

The Housing and Redevelopment Authority of St. Paul, under its power of eminent domain, condemned property located at 357-365 Livingston Avenue, St. Paul, owned by appellant, James H. Boyd. The improvements consisted of five attached dwellings located on a parcel of land 150 feet deep, having 110 feet of frontage. The units were built in 1885. Each consisted of a separate residential brick dwelling, two stories in height, with a full basement, living room, dining room, kitchen, and four bedrooms. Each had a separate furnace, hot water heater, and laundry. The property was held for income purposes and each unit was rented separately.

The commissioners awarded appellant $27,500. He appealed to the district court, alleging the value of the property to be $37,500. The jury brought in a verdict of $24,500.

1. In giving his opinion of the value, the owner offered to prove that if each unit were sold separately its market value would be $9,000 and the total value $45,000. The court sustained objection to such testimony on the ground it would "open the door to unlimited vagaries, speculation, and conjecture," relying, understandably, on the Malecker decision.

Malecker presented the question of whether an owner of 110 acres of property, undeveloped except for street grading, should be permitted to testify to what each of 131 individual lots would be worth if the land were subdivided. In sustaining the court's exclusion of such testimony, we adopted the rule that the jury might consider only what a single buyer would pay for the entire tract. We there stated (265 Minn. 7, 120 N. W. 2d 40):

"* * * Market value is not to be determined by a myriad of separate transactions where there are numerous buyers negotiating for the purchase of individual lots over a long period of time. What we are concerned with is the price which an individual purchaser would pay for the entire tract in a single transaction, without concerning the jury with all of the uncertain costs of advertising, brokers' commissions, taxes, utilities, grading, and improvements which a protracted lot-by-lot sales campaign would inevitably require."

We have concluded that as applied to improved real estate of the kind here for consideration, the Malecker rule may result in an unfair diminution of the property's true market value. It is not our intention to modify the rule that the jury must determine market value on the basis of what a willing buyer would pay a willing seller for the entire tract. Nevertheless, in arriving at the purchase price, we believe it is germane to show what a willing seller might realize from the sales of individual units.

In reaching this conclusion, we distinguish Malecker in two

respects. First, there is not here present the uncertainty concerning the cost of preparing the property for subdividing and sale which Malecker presented. That is not to say, however, that the condemning authority is precluded from offering evidence that five separate sales would be accompanied by costs not incurred in a single sale. Second, to require five separate dwellings to be valued by reference to a single sale unduly limits the number of prospective buyers and inevitably diminishes the purchase price. If, for example, the condemnor were to take a block of individual homes and buildings belonging to a single owner, it would be unfair to limit testimony to what the entire tract would bring if sold to a single buyer. Under an extreme case of this kind, it seems manifestly just to permit the owner to testify to what each unit was worth. Although the problem is therefore one of degree, we are of the opinion that Malecker cannot be inflexibly applied and that under the circumstances of this case the owner should have been permitted to testify to the value of each separate and complete unit. We emphasize, however, that it is not our purpose to modify the existing law with respect to the court's instruction on the measure of damages. Our decision applies only to the testimony which is admissible on the question of market value.

2. On cross-examination, an expert witness for the owner was not permitted to testify to a comparable sale of a single unit in a similar type of row house at 113 East Isabel. For the reasons we have already stated, we hold that such testimony is also admissible if it otherwise meets the tests we have adopted for receiving evidence of comparable sales. Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 201 Minn. 442, 453, 277 N. W. 394, 400 (1937); State, by Lord, v. Winiecki, 263 Minn. 86, 91, 115 N. W. 2d 724, 727 (1962); and State, by Mattson, v. Schoberg, 279 Minn. 145, 148, 155 N. W. 2d 750, 752 (1968). However, testimony of comparable sales offered by the owner as substantive evidence in the instant case was correctly held inadmissible by

the court under the exclusionary rules set forth in the Winiecki, Schoberg, and Fitzpatrick decisions.

Reversed and remanded.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.